# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

———————

No. 96-3277

———————

John Armstrong; Heather Potter,  *
                                  *

     Plaintiffs-Appellees,    *
                                  *

     v.                         *
                                  *

ASARCO, Inc., a New Jersey    *
Corporation,                 *
                                  *

     Defendant-Appellant.    *
                                  *

------------------------------   *
                                  *  Appeal from the United States

United States of America,     *  District Court for the
                                  *  District of Nebraska

     Plaintiff-Appellee.     *
                                  *

John Armstrong; Heather Potter,  *
                                  *

     Intervenor Plaintiffs-Appellees, *
                                  *

     v.                         *
                                  *

ASARCO, Inc.              *
                                  *

     Defendant-Appellant.    *

Submitted:   May 19, 1997

Filed:   March 9, 1998

Before McMILLIAN, ROSS and FAGG, Circuit Judges.
_____

McMILLIAN, Circuit Judge.

ASARCO, Inc. (ASARCO), a New Jersey corporation which owns and operates a lead refinery in Omaha, Nebraska, appeals from a final order entered in the United States District Court[1] for the District of Nebraska, awarding litigation costs to citizen plaintiffs John Armstrong and Heather Potter (plaintiffs) in their action against ASARCO pursuant to the federal Clean Water Act, 33 U.S.C. §§ 1251-1387. Armstrong v. ASARCO, Inc., No. 8:CV9400138 (D. Neb. July 30, 1996) (modifying and adopting the report and recommendation of the magistrate judge,[2] id. (June 5, 1996)). For reversal, ASARCO challenges the district court's designation of plaintiffs as prevailing parties and argues that the district court abused its discretion in awarding plaintiffs their litigation costs associated with their motion for a preliminary injunction and litigation costs related to the consent decree between ASARCO and the United States Environmental Protection Agency (EPA). Alternatively, ASARCO asserts that the district court's decision to award litigation costs should be reversed and the case

_____

[1]The Honorable Thomas M. Shanahan, United States District Judge for the District of Nebraska.

[2]The Honorable Thomas D. Thalkan, United States Magistrate Judge for the District of Nebraska.

-2-

remanded with directions to the district court to provide a better explanation for the award. For the reasons discussed below, we affirm in part, reverse in part, and remand the case to the district court for further proceedings consistent with this opinion.

## Jurisdiction

Jurisdiction in the district court was proper based upon 33 U.S.C. § 1365. Jurisdiction on appeal is proper based upon 28 U.S.C. § 1291. The notice of appeal was timely filed pursuant to Rule 4(a) of the Federal Rules of Appellate Procedure.

## Background

ASARCO's lead refinery (hereinafter "the facility") is located on the Missouri River in downtown Omaha and has been in operation since the 1870s. The facility historically discharged wastewater containing lead and other pollutants directly into the river. In 1982, ASARCO filed with the Nebraska Department of Environmental Quality (NDEQ) an application for a permit under the National Pollutant Discharge Elimination System (NPDES), as required by the Clean Water Act. Meanwhile, the facility continued to discharge wastewater into the river.[3]

During the 1980s, NDEQ and ASARCO entered into two stipulations which provided that, while NDEQ was processing ASARCO's permit application, NDEQ would not pursue any enforcement actions against ASARCO so long as ASARCO was complying with NDEQ's request for monitoring reports. On December 29, 1989,

---

[3]According to plaintiffs, a study conducted in the 1980s concluded that, at a single discharge point, the so-called Chicago Street sewer, ASARCO was discharging 882,400 gallons of water per day, resulting in several thousand pounds of lead and other heavy metals and pollutants being discharged into the river annually. Brief for Appellees at 7.

ASARCO timely filed a report containing data that NDEQ had requested. No further actions were taken by NDEQ for the next four years.

By 1993, over ten years after ASARCO filed its permit application, the application was still pending with NDEQ. In August 1993, the EPA wrote a letter to NDEQ advising NDEQ that the EPA was considering taking enforcement action.

In October 1993, counsel for plaintiffs filed, under the Freedom of Information Act, a request for information regarding the facility from NDEQ and the EPA. On January 13, 1994, plaintiffs provided ASARCO with a 60-day notice of their intent to sue, a prerequisite to filing a citizen suit under the Clean Water Act, 33 U.S.C. § 1365.

On January 28, 1994, NDEQ issued a notice allowing public comment on ASARCO's NPDES permit application. On March 8, 1994, NDEQ held a public hearing on the pending permit application.[4] On June 6, 1994, NDEQ issued a NPDES permit which established limitations on the levels of pollutants ASARCO was permitted to discharge into the river.

Meanwhile, on March 15, 1994, plaintiffs filed the present citizen suit under the Clean Water Act in federal district court. On March 31, 1994, the EPA filed a similar suit against ASARCO alleging virtually the same violations as those alleged by plaintiffs. The two lawsuits were consolidated.

ASARCO and the EPA began negotiations for a settlement. On September 21, 1994, ASARCO and the EPA represented to the district court that they had tentatively agreed upon a proposed consent decree and asked for a stay of all discovery.

---

[4]By this time, the permit status of the ASARCO facility apparently had generated significant public interest and media attention, and the public hearing was well-attended.

According to plaintiffs, they (plaintiffs) "continued to urge the United States not to proceed with the proposed settlement until more discovery had been conducted." Brief for Appellees at 13. The magistrate judge stayed some discovery, but specifically allowed the deposition of one ASARCO witness and ordered the completion of written discovery. Thereafter, the consent decree was not lodged with the district court.

In December of 1994, ASARCO responded to one of plaintiffs' discovery requests by disclosing monitoring reports for the time period since 1989 (when ASARCO had last submitted monitoring reports to NDEQ). The newly disclosed reports revealed, among other things, that the volume of wastewater and the amount of lead being discharged had increased significantly.[5] After receiving the new monitoring reports, plaintiffs, on January 11, 1995, moved for a preliminary injunction enjoining ASARCO's operation of the facility. On the same date, the magistrate judge granted plaintiffs' request to lift the partial stay of discovery. The magistrate judge also set the case for trial in October of 1995.

On June 28, 1995, one day before the preliminary injunction hearing was scheduled to begin, the EPA lodged a proposed consent decree with the district court and provided notice for public comment. In addition to requiring ASARCO to pay a $3.25 million fine, this new proposed consent decree contained provisions for interim treatment and required ASARCO to pay $1 million for Supplemental Environmental Projects, neither of which had been terms of the consent decree that the EPA and ASARCO negotiated in September 1994 but never lodged with the district court.

The hearing on plaintiffs' motion for a preliminary injunction occurred on June 29 and 30, 1995. ASARCO produced evidence to show that newly-installed wastewater

---

[5]According to plaintiffs, the amount of wastewater discharge from the facility had increased to approximately 1.2 to 1.8 million gallons per day in 1994, including approximately 11 kilograms of lead per day in 1994. Brief for Appellees at 13.

treatment equipment had significantly reduced the amount of toxic metals being discharged into the river. That treatment equipment became operational after plaintiffs filed their motion for a preliminary injunction. Although ASARCO conceded it was still violating applicable effluent limitations, it argued that plaintiffs could not show irreparable harm. The magistrate judge took the motion for a preliminary injunction under advisement.

The period for public comment on the proposed consent decree expired on August 13, 1995. On October 3, 1995, the EPA moved for the district court to enter the consent decree as a final judgment, and ASARCO joined in that motion. Plaintiffs opposed the motion on the ground that the consent decree did not go far enough to address ASARCO's violations. Following a hearing on December 22, 1995, the district court granted the EPA's motion and entered the consent decree as a final judgment concerning all issues except the remaining attorney fees issue under 33 U.S.C. § 1365(d). Armstrong v. ASARCO, Inc., slip op. at 11 (Jan. 5, 1996) (district court order). The district court found the consent decree to be "fair, reasonable and adequate in light of the purposes of the Clean Water Act." Id. at 10-11. The district court never ruled on the motion for a preliminary injunction because, the district court explained, it "ha[d] taken the motion for a preliminary injunction under advisement, pending [its] decision on the motion for entry of the Consent Decree." Id. at 4.

Pursuant to 33 U.S.C. § 1365(d),[6] plaintiffs applied for litigation costs (including attorney fees) totaling $879,579.81.[7] The matter was initially submitted to the

---

[6]Section 1365(d) provides in pertinent part: "The court . . . may award costs of litigation (including reasonable attorney and expert witness fees) to any prevailing or substantially prevailing party, whenever the court determines such award is appropriate." 33 U.S.C. § 1365(d).

[7]According to ASARCO, plaintiffs' original request included approximately $206,051.50 for work on the motion for a preliminary injunction and approximately $304,861.00 for work related to the consent decree. Brief for Appellant at 9. However, because the district court did not award all of the costs requested and some work was spent on both activities, the amounts awarded for each of these two activities cannot be precisely quantified at this time. See id. at 9 & n.4.

magistrate judge, who concluded, among other things:

> ASARCO can hardly consider itself vindicated after the entry of the consent decree (Filing No. 262) on January 5, 1996.  That consent decree required ASARCO to pay a $3.25 million civil penalty, to comply with monitoring requirements, to establish an interim treatment system, and to pay $1 million in environmental enhancement projects.  Considering the original objective of the citizen plaintiffs in bringing suit against ASARCO, and weighing the relief ultimately obtained, the court finds that the citizen plaintiffs are prevailing parties within the meaning of 33 U.S.C. § 1365(d) and an award of attorney's fees would be appropriate.  Whether or not the citizen plaintiffs desired for stiffer penalties to be levied against ASARCO or for more stringent protection against future damage to the environment, they received essentially what was sought in the complaint -- a cessation of pollution by, and a substantial civil fine levied against, the defendant.

Slip op. at 8 (June 5, 1996) (magistrate judge's report and recommendation).  The magistrate judge rejected ASARCO's argument that plaintiffs should be treated as having achieved only limited success.  The magistrate judge concluded "the citizen plaintiffs have accomplished virtually everything they set out to do.  Accordingly, on the issue of success on the merits, the court finds that the fees of the attorneys should not be reduced for lack of success."  Id. at 9.  The magistrate judge then proceeded to consider each item requested by plaintiffs, reducing some as exceeding a reasonable amount.  Id. at 10-23, 24-27.  The magistrate judge also rejected plaintiffs' request for a lodestar enhancement, id. at 24, and recommended a total award of $778,364.94, id. at 28.

Both ASARCO and plaintiffs filed objections to the magistrate judge's report and recommendation.[8]  Upon <u>de novo</u> review, the district court held:

> the citizen-plaintiffs are prevailing parties and are entitled to attorneys' fees and expenses pursuant to 33 U.S.C. § 1365(d).  In addition, the court does not agree with ASARCO that the citizen-plaintiffs should be denied fees and expenses for the variety of efforts characterized by ASARCO as unnecessary or unsuccessful.

Slip op. at 4 (July 30, 1996) (citing <u>Atlantic States Legal Found., Inc. v. Eastman Kodak Co.</u>, 933 F.2d 124, 128 (2d Cir. 1991) (<u>Atlantic States v. Kodak</u>)).  The district court overruled ASARCO's objections to the report and recommendation, granted partial relief on plaintiffs' objections, and awarded the amount calculated by the magistrate judge plus an additional $12,130.94.[9]  <u>Id.</u> at 9.  ASARCO appealed.

## Discussion

The Clean Water Act provides that the district court, "in issuing any final order in any action brought pursuant to [the Clean Water Act], may award costs of litigation (including reasonable attorney and expert witness fees) to any prevailing or substantially prevailing party, whenever the court determines such award is appropriate."  33 U.S.C. § 1365(d).  As stated above, the magistrate judge held, and the district court agreed, that plaintiffs are prevailing parties in the present case.  To the contrary, however, ASARCO characterizes plaintiffs' efforts as "superfluous,"

---

[8]At ASARCO's request, the district court construed the magistrate judge's report as a report and recommendation under 28 U.S.C. § 636(b)(1)(B), (C).  <u>Armstrong v. ASARCO, Inc.</u>, slip op. at 2 (July 30, 1996).

[9]The district court also gave one of the law firms for plaintiffs an opportunity to submit a supplemental brief with additional documentation of their expenses.  <u>Id.</u> at 9.

"duplicative," "wasteful," "unnecessary," and "unsuccessful." ASARCO maintains that plaintiffs, in fact, subverted the goals of the Clean Water Act when they disagreed with, and pursued goals contrary to, the EPA's position. Consequently, ASARCO argues, plaintiffs must now bear the risk of having essentially failed in light of the EPA's success.

"[W]e review de novo the legal question of whether a litigant is a prevailing party." Jenkins v. State of Missouri, 127 F.3d 709, 713 (8th Cir. 1997). In our opinion, plaintiffs played the roles of catalyst and private attorney general, just as Congress envisioned, thereby successfully contributing to ASARCO's remediation efforts and eventual settlement with the EPA. When a polluter settles with government authorities following the commencement of a citizen suit, it is permissible to infer that the citizen suit motivated the settlement, thereby making the plaintiff a prevailing party. See Atlantic States v. Kodak, 933 F.2d at 128. Thus, we reject ASARCO's characterization of plaintiffs' efforts as essentially unsuccessful and instead agree with the district court's conclusion that plaintiffs are prevailing parties in the present case.

ASARCO now argues on appeal that, because plaintiffs achieved at best only *limited* success, the award should be reduced on the ground that it is not reasonably related to the results obtained, taking into consideration the scope of the litigation as a whole, the magnitude of plaintiffs' demands in the litigation, and the issues upon which plaintiffs succeeded versus those upon which plaintiffs failed, for which costs should be excluded. Brief for Appellant at 15-17 (citing, among other cases, Hensley v. Eckerhart, 461 U.S. 424, 435 (1983) ("A reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole.")); see also Jenkins v. State of Missouri, 127 F.3d at 716 ("If the plaintiff's success is limited, he is entitled only to an amount of fees that is reasonable in relation to the results obtained."). Specifically, ASARCO argues that plaintiffs should be denied their litigation costs related to two separate matters: plaintiffs' motion for a preliminary injunction and the consent decree between ASARCO and the EPA.

In challenging the award of litigation costs associated with plaintiffs' motion for a preliminary injunction, ASARCO emphasizes that injunctive relief was never actually granted by the district court following the evidentiary hearing.  Therefore, ASARCO argues, the motion was unsuccessful.  ASARCO contends that plaintiffs were unable to obtain injunctive relief because they could not demonstrate that the facility's discharges threatened irreparable harm to the environment.  Brief for Appellant at 18 (citing Dataphase Systems, Inc. v. C. L. Systems, Inc., 640 F.2d 109 (8th Cir. 1981) (en banc)).  ASARCO further maintains that the time and effort spent by plaintiffs on their motion for a preliminary injunction "did not contribute to any overall success they may have obtained."  Id.

In challenging the district court's award of plaintiffs' litigation costs associated with the consent decree, ASARCO claims that the EPA made many attempts to involve plaintiffs' attorneys in the settlement process but plaintiffs elected not to participate.  ASARCO suggests that plaintiffs were opposed to *any* settlement whatsoever.  ASARCO compares this case to United States v. Hooker Chemicals & Plastics Corp., 591 F. Supp. 966, 968 (W.D.N.Y. 1984), in which the district court denied the plaintiff-intervenors' request for attorney fees despite their claim that their opposition to a settlement agreement between the government and the defendant effected beneficial modifications of the agreement.  ASARCO also relies on Association for Retarded Citizens v. Schafer, 83 F.3d 1008, 1012 (8th Cir. 1996), in which this court admonished that "[a] prevailing party who aggressively seeks a greater victory and fails is entitled to a proportionally lesser fee award."  Finally, citing the district court's observation in this case that the consent decree was "fair, reasonable, and adequate in light of the purposes of the Clean Water Act," slip op. at 10-11 (Jan. 5, 1996), ASARCO concludes that plaintiffs' efforts in opposing the consent decree had no direct or indirect impact whatsoever on the outcome of this litigation and cannot be deemed reasonable or necessary.

Section 1365(d) leaves the award of litigation costs to the district court's sound

discretion, which the district court has a duty to exercise upon a proper motion.  Jones v. City of St. Clair, 804 F.2d 478, 481-82 (8th Cir. 1986) (holding that, upon a proper motion for costs and fees under 33 U.S.C. § 1365(d), the trial court has a duty to exercise that discretion and remanding the case to the district court with directions to consider and exercise such discretion).  In the present case, the district court did consider and exercise its discretion to award litigation costs.  We will not reverse absent a finding of an abuse of discretion.  Jenkins v. State of Missouri, 127 F.3d at  713-14 (abuse of discretion standard governs review of fee awards, while prevailing party status is reviewed de novo).


Contrary to ASARCO's argument, plaintiffs' effort to obtain a preliminary injunction was not a failure simply because the district court never actually ruled on the motion.  ASARCO's wastewater treatment measures became operational after plaintiffs filed their motion for a preliminary injunction, but before the hearing on the motion took place.  It therefore appears that the very threat of a possible court-imposed injunction shutting down the facility -- and the perceived need to undermine plaintiffs' irreparable harm argument -- motivated ASARCO to implement and maintain interim treatment measures to reduce effluent levels prior to the hearing date.  Also, as the district court noted, "the citizen-plaintiffs were not 'unsuccessful' in obtaining a preliminary injunction inasmuch as the requested preliminary injunctive relief was eventually rendered moot by the Consent Decree in the action."  Slip op. at 4 (July 30, 1996).  The June 1995 consent decree -- which imposed greater sanctions on ASARCO than the original September 1994 consent decree that was never lodged with the district court -- was not proposed by ASARCO and the EPA until after the motion for a preliminary injunction had been filed and the hearing was about to take place.  The hearing on the motion for a preliminary injunction created a judicial record of ASARCO's history of non-compliance and presumably also assisted the district court's evaluation of the proposed consent decree.  In sum, we find substantial support for the conclusion that plaintiffs' motion for a preliminary injunction was successful in many ways, up until the point at which the hearing was completed.  Accordingly, we hold that the district court

did not abuse its discretion in awarding plaintiffs litigation costs for work related to the motion for a preliminary injunction through completion of the hearing, and the award of such costs is affirmed.

Any litigation costs incurred in relation to the motion for a preliminary injunction after the hearing was completed, however, could not have been reasonably related to the results obtained. Therefore, to the extent that any litigation costs were awarded for work performed after June 30, 1995, in relation to the motion for a preliminary injunction, we reverse. See Hensley v. Eckerhart, 461 U.S. at 440 (a reduced fee award is appropriate if the relief is limited compared with scope of the litigation as a whole); Jenkins v. State of Missouri, 127 F.3d at 716 (a plaintiff is entitled to only the amount of fees that is reasonable in relation to the results obtained).

As for plaintiffs' litigation costs related to the consent decree, we agree with the magistrate judge that

> when this suit was originally brought the United States was not diligently prosecuting the case. It was only after the citizen plaintiffs filed suit against ASARCO that the government filed suit. . . . [T]he success of this case and the entry of the consent decree between ASARCO and the United States was largely due to the efforts of the citizen plaintiffs.

Slip op. at 9 (June 5, 1996). The facts suggest that plaintiffs' early efforts did beneficially contribute directly and indirectly to the process from which the June 1995 consent decree evolved. Due in part to the plaintiffs' efforts, the June 1995 consent decree imposed greater sanctions upon ASARCO than the September 1994 consent decree that was negotiated by the EPA and ASARCO but never lodged with the district court. We therefore affirm the award of litigation costs for plaintiffs' efforts related to the consent decree, to the extent that such costs were incurred on or before June 28, 1995.

After the June 1995 consent decree was lodged with the district court, however, plaintiffs actively but unsuccessfully opposed the entry of the consent decree. The district court entered the June 1995 consent decree as a final judgment – without modification – upon finding it was "fair, reasonable and adequate in light of the purposes of the Clean Water Act." Slip op. at 10-11 (Jan. 5, 1996). We therefore hold that the district court abused its discretion insofar as it awarded plaintiffs their litigation costs for work in opposition to the entry of the June 1995 consent decree because such work was not reasonably related to the results obtained. See Hensley v. Eckerhart, 461 U.S. at 440; Jenkins v. State of Missouri, 127 F.3d at 716. Accordingly, the award of litigation costs for work related to the consent decree is reversed to the extent that such costs were incurred by plaintiff after June 28, 1995.

Finally, ASARCO argues that the district court's order awarding litigation costs should be reversed and the case remanded because the district court failed to explain its decision adequately. In support of this contention, ASARCO relies upon the following statement by the Supreme Court:

> [T]he district court has discretion in determining the amount of a fee award. This is appropriate in view of the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters. It remains important, however, for the district court to provide a concise but clear explanation of its reasons for the fee award. When an adjustment is requested on the basis of either the exceptional or limited nature of the relief obtained by the plaintiff, the district court should make clear that it has considered the relationship between the amount of the fee awarded and the results obtained.

Hensley v. Eckerhart, 461 U.S. at 437 (emphasis added).

-13-

To the extent ASARCO's argument on this point is not rendered moot by our disposition, it is without merit. It cannot seriously be disputed that the magistrate judge provided a clear and concise explanation of his reasons for the compensation he recommended. In a nutshell, the magistrate judge concluded that plaintiffs are prevailing parties in this litigation as a whole because of their impact as a catalyst and their success in achieving essentially what they had sought to accomplish. Slip op. at 5-9 (June 5, 1996). In addition, the magistrate judge undertook and set forth a detailed analysis of plaintiffs' fee request and each of ASARCO's objections thereto. Id. at 9-27.

In its own concise order, the district court, upon de novo review, expressly accepted the magistrate judge's report and recommendation with modifications as specifically set forth in the district court's order. Slip op. at 8 (July 30, 1996). Moreover, upon consideration of ASARCO's objections to the magistrate judge's report and recommendation, the district court stated "the court does not agree with ASARCO that the citizen-plaintiffs should be denied fees and expenses for the variety of efforts characterized by ASARCO as unnecessary or unsuccessful." Id. at 4. The district court then concluded: "Magistrate Judge Thalkan's recommended reductions in requested attorneys' fees (filing no. 288 at 11, 15-19, 20-21) are reasonable and will be adopted by the court because the record does not warrant further reductions." Id. We believe that the district court did make clear that it considered the relationship between the amount of the fee awarded and the results obtained. Therefore, ASARCO is not entitled to any relief on appeal for inadequacy of the district court's explanation.

## Conclusion

For the reasons set forth above, the district court's award of plaintiff's litigation costs pursuant to 33 U.S.C. § 1365(d) is affirmed except that we reverse the award of any litigation costs incurred after June 30, 1995, in connection with the motion for a preliminary injunction and we reverse the award of any litigation costs incurred after

-14-

June 28, 1995, in connection with the consent decree.  The case is remanded for further proceedings consistent with this opinion.


A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.