# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-1160

_____

Sierra Club,

                Appellee,

v.

City of Little Rock,

                Appellant.

Appeal from the United States
District Court for the
Eastern District of Arkansas.

[PUBLISHED]

_____

Submitted:  June 11, 2003
Filed:   December 12, 2003

_____

Before MELLOY, HANSEN, and SMITH, Circuit Judges.

_____

HANSEN, Circuit Judge.

The City of Little Rock appeals the district court's award of attorney fees to the Sierra Club in Sierra Club's action against the City and against the Little Rock Sanitary Sewer Committee[1] under the Clean Water Act, 33 U.S.C. §§ 1251-1387. The City also appeals the district court's denial of its request for expert fees. We reverse the grant of attorney fees and affirm the denial of expert fees.

_____

[1]The district court ordered that both the City and the Little Rock Sanitary Sewer Committee pay attorney fees to Sierra Club. The Little Rock Sanitary Sewer Committee does not appeal its order.

I.

The City of Little Rock ("the City") operates a Municipal Separate Storm Sewer System in the city of Little Rock, Arkansas, pursuant to a National Pollutant Discharge Elimination System (NPDES) permit issued by the Arkansas Department of Environmental Quality (ADEQ).[2] The permit authorizes the City to discharge storm water runoff into the Arkansas River. The permit requires the City to effectively prohibit non-storm water discharges (i.e., sewage) into the Storm Sewer System. The storm water permit also requires the City to operate a Storm Water Quality Management Program, which includes controls necessary to reduce the discharge of pollutants to the maximum extent practicable, a defined term under the permit. The permit further requires the City to utilize "a comprehensive master planning process" related to reducing the discharge of pollutants from areas of new development. (Appellant's App. at 394.)

The City has delegated the operation of the Little Rock Sanitary Sewer Collection System to the Little Rock Sanitary Sewer Committee (hereinafter "Sewer Committee") pursuant to Arkansas statute. See Ark. Code Ann. § 14-235-206(a)(1)(A) ("The construction, acquisition, improvement, equipment, custody, operation, and maintenance of any works for the collection, treatment, or disposal of sewage and the collection of revenue from it for the service rendered by it, shall be effected and supervised by a committee to be designated for that purpose by the municipal council."). The Sewer Committee has control over the operation and maintenance of the Sanitary Sewer Collection System and control over revenues collected from the use of the system. To the extent funds in excess of the revenues generated from use of the system are needed to operate and maintain the Sanitary

---

[2]The permit was issued to the City and the State Highway Department as co-permittees, but we refer only to the City throughout our opinion, as the State Highway Department is not a party to this suit.

Sewer Collection System, the City retains authority to issue bonds or authorize rate increases. The Sewer Committee likewise operates pursuant to a NPDES permit.

The Sierra Club, a national non-profit public interest organization, brought a citizens' complaint against the City and the Sewer Committee, alleging that the defendants violated the Clean Water Act and their respective permits by allowing untreated sewage from the Sanitary Sewer Collection System to overflow (referred to throughout the litigation as sanitary sewer overflows) on numerous occasions and enter Arkansas rivers and streams. The Sierra Club's second cause of action alleged that the City failed to follow the comprehensive master planning process mandated by the City's NPDES permit. The Sierra Club alleged in its third cause of action that the sanitary sewer overflows also violated the Resource Conservation and Recovery Act, 42 U.S.C. § 6901 *et seq.* ("RCRA"), by creating imminent and substantial endangerment to the environment. The district court granted partial summary judgment to Sierra Club against the Sewer Committee, finding that it had violated the Clean Water Act, a strict liability statute, by allowing the sanitary sewer overflows. See 33 U.S.C. § 1311(a). The Sewer Committee and Sierra Club entered into a Settlement Agreement to address the sanitary sewer overflows. Sierra Club dismissed the other counts against the Sewer Committee pursuant to the Settlement Agreement.

Sierra Club pursued its claims against the City following the Settlement Agreement with the Sewer Committee. On cross-motions for summary judgment, the district court found that "the City [wa]s in violation of the portion of its permit which relates to sanitary sewer overflows into the municipal storm sewer system" (Appellant's App. at 265), but refused to enter an injunction or order any other remedy against the City. The court retained jurisdiction "to resolve any issues which may develop regarding remedies for permit violations." (Id.) The court subsequently held a bench trial, found for the City on Sierra Club's other claims, and ordered the case closed. (Id. at 400.)

3

Following the district court's disposition of the case, Sierra Club moved for an award of attorney fees against the Sewer Committee and the City. The City sought an award of expert witness fees against Sierra Club related to its successful defense of the comprehensive master planning process portion of the case. The district court denied the City's request, holding that as a prevailing defendant, the City had failed to establish that Sierra Club's action was frivolous, unreasonable, or without foundation. The court granted Sierra Club the full amount of attorney fees ($92,635) sought against the Sewer Committee, which award is not involved in this appeal, and granted 50% of the fees sought against the City to reflect the City's partially prevailing status. The City appeals the district court's denial of its motion for expert witness fees and its judgment ordering the City to pay $50,308.09 in attorney fees to Sierra Club.

## II.

The Clean Water Act allows "any citizen to commence a civil action on his own behalf" against any governmental entity that has allegedly violated the Clean Water Act. 33 U.S.C. § 1365(a). The district court is authorized to enforce the violated standard or limitation and order civil penalties. Id. The Clean Water Act also provides that "[t]he [district] court, in issuing any final order in any action brought pursuant to this section, may award costs of litigation (including reasonable attorney and expert witness fees) to any prevailing or substantially prevailing party, whenever the court determines such award is appropriate." § 1365(d). While we review the district court's decision regarding an award of costs and fees under the Clean Water Act for an abuse of discretion, the issue of whether a party is a "prevailing or substantially prevailing party" is an issue of law we review de novo. See Armstrong v. ASARCO, Inc., 138 F.3d 382, 388 (8th Cir. 1998).

4

A.    Sierra Club's Motion for Attorney Fees

The City appeals the district court's award of $50,308.09 in attorney fees to Sierra Club, arguing that Sierra Club is not a substantially prevailing party. In granting partial summary judgment in favor of Sierra Club on the issue of whether the City violated its permit in allowing the sanitary sewer overflows to occur unabated, the court determined that the regulations under the Clean Water Act required the operator of a storm sewer system ultimately to either entirely eliminate non-storm water discharges into the storm sewers or seek a permit allowing a certain number of non-storm water discharges. The court found that the City was "technically in violation of its permit" (Appellant's App. at 333), given the length of time and the number of sanitary sewer overflows that had continued unabated. Despite the violation, the district court declined to award any of the relief Sierra Club sought, which included in relevant part: a declaration that the City was in violation of the Clean Water Act; an injunction ordering the City to comply with its permit, to cease all unlawful discharges, and to clean up prior unlawful discharges; and civil penalties up to $25,000 per day. (Id. at 33-35.) In denying Sierra Club's request for an injunction, the court noted that there was no evidence that the City would not cooperate with the Sewer Committee in carrying out the Sewer Committee's obligations under the Settlement Agreement, as the only record evidence showed that the City had always complied with the Sewer Committee's reasonable requests in the past. (Id. at 333-34.)

Under the American Rule, parties to a lawsuit generally foot their own attorney fees "absent explicit statutory authority" to the contrary. Buckhannon Bd. & Care Home, Inc. v. W.V. Dep't of Health & Human Res., 532 U.S. 598, 602 (2001). The Clean Water Act explicitly allows an award of attorney fees to "a prevailing or substantially prevailing party." 33 U.S.C. § 1365(d). A party prevails either by "obtain[ing] an enforceable judgment . . . or comparable relief through a consent decree or settlement . . . [that] directly benefit[s the plaintiff] at the time of the judgment or settlement." Farrar v. Hobby, 506 U.S. 103, 111 (1992) (internal

citations omitted). The Supreme Court has made clear "'that a plaintiff [must] receive at least some relief on the merits of his claim before he can be said to prevail,'" Buckhannon, 532 U.S. at 603-04 (quoting Hewitt v. Helms, 482 U.S. 755, 760 (1987)), such that the relief "materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." Farrar, 506 U.S. at 111-12. Further, the change in the relationship must be "judicially sanctioned;" a voluntary change in the relationship between the parties as a result of a lawsuit is insufficient to trigger a shift in the general rule that parties pay their own fees. Buckhannon, 532 U.S. at 605 (rejecting catalyst theory of awarding attorney fees under prevailing party fee-shifting statutes).

Sierra Club can point to no "actual relief on the merits" as against the City. While the Sewer Committee entered a Settlement Agreement and agreed to address the sanitary sewer overflows, the City was not party to the agreement. Although the district court granted summary judgment in Sierra Club's favor, all Sierra Club received was a declaration that the City had violated its permit. The court declined to grant any of the relief that Sierra Club sought, not even a requested order enjoining the City from future violations of its permit. "A declaratory judgment . . . will constitute relief . . . if, and only if, it affects the behavior of the defendant toward the plaintiff." Rhodes v. Stewart, 488 U.S. 1, 4 (1988) (reversing attorney fee award in 42 U.S.C. § 1988 case in which court found that prison officials violated prisoners' procedural rights in denying request for magazine subscription, where only relief was in form of changed prison policies that did not benefit either plaintiff as neither were in custody at time judgment was entered). "[A] judicial pronouncement that the defendant has violated the law, . . . without an enforceable judgment on the merits, cannot render [the plaintiff] a prevailing party." Pedigo v. P.A.M. Transp. Inc., 98 F.3d 396, 398 (8th Cir. 1996) (reversing attorney fee award where plaintiff received no damage award and no longer worked for the defendant, making any equitable relief unavailable). Sierra Club can point to no effect that the judicial declaration had

6

on the City's behavior toward Sierra Club. Further, without any relief to enforce, Sierra Club did not receive an "enforceable judgment" and was not a prevailing party.

Sierra Club argues that the City's subsequent approval of a 42% sewer rate increase, in response to a request by the Sewer Committee for funding to fulfill the Sewer Committee's obligations under its Settlement Agreement with Sierra Club, constitutes the necessary relief to support an award of attorney fees. It argues that the district court's judgment declaring the City in violation of its permit was necessary to convince the City to approve the rate increase, inferring that "but for" the court's judgment that the City had violated its permit, the City would not have granted the rate increase, and the court's retention of jurisdiction supplies the requisite "judicial imprimatur" required by Buckhannon. See 532 U.S. at 605. The facts of the case do not support Sierra Club's conclusion. The relief that Sierra Club sought against the City was an assurance that the City would cooperate with the Sewer Committee to ensure that the Settlement Agreement was implemented. (Appellant's App. at 312.) The district court found that the City had always cooperated with the Sewer Committee in the past and that there was no reason to believe it would not continue to do so. The district court explicitly refused to grant the requested injunction for this very reason. (Id.) Sierra Club cannot rely on the City's subsequent conduct in cooperating with the Sewer Committee as judicially sanctioned relief when the court specifically refused to require the City to take the subsequent action. The facts of this case demonstrate that the Sewer Committee's request was the source of the rate increase, not the district court's finding that the City had violated its permit. Cf. Peter v. Jax, 187 F.3d 829, 835-36 (8th Cir. 1999) (holding that plaintiff was not prevailing party where state defendant agreed to a stipulated injunction based on change in Supreme Court precedent rather than pending litigation), cert. denied, 529 U.S. 1098 (2000).

The district court's retention of jurisdiction over issues concerning permit violation remedies does not aid Sierra Club.[3] If the City had declined to implement the requested rate increase, the court could not have held the City in contempt under its retained jurisdiction because the City would not have been in violation of any court order. The court order merely declared the City in violation of its permit and the court retained jurisdiction "to resolve any issues which may develop regarding remedies for permit violations." (Appellant's App. at 265 (emphasis added).) The court did not address what action, if any, the City was required to take in relation to the Sewer Committee's Settlement Agreement. In short, the judgment did not change the relationship between Sierra Club and the City. "[T]he district court's [retained] jurisdiction alone is not enough to establish a judicial '*imprimatur*'" where the court's jurisdiction does not provide the court with contempt power. Christina A. ex rel. Jennifer A. v. Bloomberg, 315 F.3d 990, 993-94 (8th Cir. 2003) (holding that district court's retained jurisdiction over private settlement agreement did not elevate agreement to consent decree sufficient to establish prevailing party status; dismissal order approving of settlement agreement and retaining enforcement jurisdiction did not incorporate any settlement terms and at most provided avenue for parties to seek enforcement as a breach of contract, not as violation of a court order). At the end of the day, "the judgment . . . afforded [Sierra Club] no relief whatsoever," Rhodes, 488 U.S. at 4, and the district court erred in ordering the City to pay attorney fees.

B.      The City's Motion for Expert Witness Fees

Where a statute allows an award of litigation fees to a prevailing party, the "district court may in its discretion award [litigation] fees to a prevailing defendant

---

[3]The City argues that the district court's retained jurisdiction ended when it ordered the case closed with the entry of its judgment following the bench trial. The closing order does not mention its effect on the court's previously retained jurisdiction. Our disposition of this argument makes it unnecessary to resolve the extent of the district court's retained jurisdiction.

. . . upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." Christiansburg Garment Co. v. E.E.O.C., 434 U.S. 412, 421 (1978) (emphasis added). There is no dispute that the City was the prevailing party on the comprehensive master planning process issue. The district court denied the City's request for expert fees, however, because it found that Sierra Club's claims on that issue were "not frivolous, unreasonable or without foundation." (Add. at 39.) Because the district court applied the proper standard, we review its denial of the City's request for expert fees for an abuse of discretion.

Sierra Club claimed that the City violated its permit by failing to implement "a comprehensive master planning process to develop, implement, and enforce controls to reduce, to the [maximum extent practicable], the discharge of pollutants from areas of new development and significant redevelopment after construction is completed." (Appellant's App. at 32 (internal marks omitted).) In denying Sierra Club's motion for summary judgment on this issue, the district court noted "that there [wa]s going to be conflicting evidence by experts as to whether the City has or has not addressed the quality of the discharge into the . . . storm sewer system." (Appellant's App. at 331.) During the bench trial, Sierra Club's expert testified that in his opinion the City had addressed only the quantity of discharge into the storm system but had failed to address whether any of the City's processes would reduce pollutants to the maximum extent practicable. Sierra Club forwarded its theory that the City, as a permittee, was required to perform a thorough review for the explicit purpose of determining whether and to what extent the City's procedures would reduce pollutants in areas of new development. It argued that a conglomeration of policies and ordinances that only tangentially affected water issues was not sufficient to meet the permit requirement.

Although the district court ultimately concluded that "[t]he City has done exactly what the City stated would be done in its storm water application and storm

water permits" (Appellant's App. at 399), we cannot say that Sierra Club's action was frivolous, unreasonable, or without foundation. As noted by the district court, the EPA has provided tremendous flexibility to permittees "relative to the exact form the required comprehensive master planning process may take." (<u>Id.</u>) Nowhere does the EPA define what constitutes a comprehensive master planning process. The City's comprehensive master planning process has evolved over a period of several years and encompasses a variety of different ordinances, plans, codes, standards, and related processes. Although the permit does not require the comprehensive master planning process to be incorporated into a single document, the City's failure to do so made it difficult to determine the City's compliance when Sierra Club originally brought this suit. The district court did not abuse its discretion in denying the City's motion for litigation costs as the prevailing defendant.

III.

The district court's judgment ordering the City to pay attorney fees to Sierra Club is reversed, and its judgment denying litigation costs to the City is affirmed.

_____