Joan **PETER**, Sarah Peter, a minor, By and Through her parent and natural guardian Joan **PETER**, Krista Westendorp, Douglas Westendorp and Aaron Westendorp, a minor, by and through his parents and natural guardians Krista Westendorp and Douglas Westendorp, Plaintiffs,

v.

Robert **WEDL**, Commissioner, Minnesota Department of Children, Families and Learning, Arne H. Carlson, Governor, State of Minnesota, Independent School District No. 877 (Buffalo, Minnesota) and Independent School District No. 273 (Edina, Minnesota), Defendants.

No. CIV. 4–96–642(DSD/JMM).

United States District Court,
D. Minnesota.

Aug. 12, 1998.

J. Matthew Szymanski, Gammon & Grange, McLean, VA, for Plaintiffs.

Steven Liss, Rachel Kaplan, Minnesota Atty. Gen. Office, St. Paul, MN, for Defendants.

## ORDER

MASON, United States Magistrate Judge.

The above matter came on for hearing upon Plaintiffs' Application for an Award of Attorneys' Fees and Expenses Against the State Defendants[1] [Docket No. 123], pursuant to the provisions of 42 U.S.C. § 1988. The Motion is before the undersigned for an Order, pursuant to 28 U.S.C. § 636(c) and related Rules of this Court. The parties waived their right to proceed before a United States District Judge and voluntarily consented to have proceedings on said Motion conducted and determined by the undersigned U.S. Magistrate Judge, including an Order for the entry of judgment thereon. It was so ordered by District Judge David S. Doty. [Docket No. 146].

Plaintiffs seek an award of $272,494.80 for legal services "(a) *on the merits* from preparation of plaintiffs' pre-litigation demand letter until the July 31, 1997 Stipulation by the State Defendants granting plaintiffs full relief and mooting their claims against the State, and (b) for the *fee recovery* effort commencing July 1, 1997 and continuing to the present." Docket No. 123 (emphasis in

---

**1.** Defendants Robert Wedl, the Commissioner of the Minnesota Department of Children, Families and Learning, and Arne H. Carlson, the Governor of Minnesota, are referred to by Plaintiffs' counsel as the "State Defendants." This Court will also use that terminology herein when referring to them.

original). J. Matthew Szymanski, Esq., appeared on behalf of Plaintiffs; Steven B. Liss, Esq. and Rachel L. Kaplan, Esq. appeared on behalf of the State Defendants.

## FINDINGS OF FACT

### The Parties

Plaintiffs Sarah Peter and Aaron Westendorp are disabled children. Sarah Peter is a child with Down's Syndrome. She resides with her mother, Joan Peter, in Buffalo, Minnesota, within the geographical boundaries of Independent School District No. 877. Aaron Westendorp is a child with disabilities resulting from a brain stem lesion. He has facial paralysis and spastic quadri paresis, breathes through a permanent tracheostomy, eats through a permanent gastrostomy tube, and is unable to speak. He has full cognitive functions, however, and is able to communicate through use of finger spelling. Complaint at ¶ 32. He resides with his parents Douglas Westendorp and Krista Westendorp in Edina, Minnesota, within the geographical boundaries of Independent School District No. 273.

Plaintiff Choice in Education Foundation, Inc., is a nonprofit advocacy corporation whose members include parents of children with special education needs, and religious schools and organizations.

### Allegations in the Complaint

The Complaint was filed on July 26, 1996. It alleges violations of 42 U.S.C. § 1983 for deprivation of Plaintiffs' rights under the free speech clause and the free exercise clause of the First Amendment to the United States Constitution, and under the equal protection clause of the Fourteenth Amendment to the United States Constitution. The Complaint also sought relief for the alleged violation of the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb, *et seq.*, and the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 ("IDEA"), *et seq.* Most of the underlying facts pertinent to this dispute are set forth in the District Court's Order of March 26, 1997, *Peter v. Johnson*, 958 F.Supp. 1383 (D.Minn.1997).

The principal allegation of Plaintiffs' Complaint against the School Districts is that Sarah Peter and Aaron Westendorp should have been provided on-site paraprofessional services at private religious schools. The allegation against the State Defendants is that their Rule on that subject (Minn. Rule 3525.1150, subparts 1 and 2) was unconstitutional, when read in connection with the provisions of Minn.Stat. § 123.932, subds. 3 and 9. The Complaint asked for a declaration of the invalidity of the Rule, and an injunction requiring the School Districts to refrain "from denying special education services of any kind, including on-premises services, on the basis of the religious nature of the private school chosen by the parents of an otherwise eligible child." The Complaint also sought costs and attorneys' fees pursuant to 42 U.S.C. § 1988.

Plaintiffs' Complaint specifically challenged Minnesota's regulations and policies which implement the State's policies and plan under the IDEA. The IDEA states that children with disabilities are to be provided with a "free appropriate public education." 20 U.S.C. § 1400(c). The IDEA is implemented in Minnesota under the state statute and regulations. Minn.Stat. § 120.17; Minn. Rules ch. 3525.

Minnesota Rule 3525.1150, subp. 1, provides in part: "Districts shall identify and make available special education to all students who are disabled regardless of whether they attend a nonpublic school...."

Minnesota Rule 3525.1150, subp. 2 provides: "Special education services provided indirectly or directly or the pupil must be provided at a neutral site that is consistent with Minnesota Statutes, section 123.932, subdivision 9." That Statute defines "neutral site" as "a public center, a nonsectarian nonpublic school, a mobile unit located off the nonpublic school premises, or any other location off the nonpublic school premises which is neither physically nor educationally identified with the functions of the nonpublic school."

Under Minn.Stat. § 123.932, subd. 3, "nonpublic school" means "any school, church or religious organization, or home school" wherein a Minnesota resident may legally fulfill the compulsory instruction require-

ments. "It does not mean a public school." *Id*.

Under Minn.Stat. § 123.932, subd. 3a, a "nonsectarian nonpublic school" means "any nonpublic school as defined in subdivision 3, which is not church related, is not controlled by a church, and does not promote a religious belief." A nonpublic sectarian school is not included in the definition of a "neutral site." *Peter v. Johnson*, 958 F.Supp. 1383 at 1388 (D.Minn.1997).

Plaintiffs' Complaint alleged that "[t]he effect of Minnesota State Rule 3525.1150, in connection with the referenced Minnesota Statutes, is to deny on-premises special education services to otherwise eligible students attending private religious schools, but to authorize such services for eligible students attending private non-religious schools, where such services are deemed an appropriate part of a child's IEP." Complaint at ¶ 16.[2]

### *Early Motions*

Plaintiffs, the School District Defendants and the State Defendants brought early Motions for dispositive relief. Plaintiffs filed a Motion for Preliminary Injunction pursuant to Rule 65(a) of the Federal Rules of Civil Procedure [Docket Nos. 3, 5 & 20]. Plaintiff sought an order:

"enjoining, restraining, and forbidding defendants from denying state special education services, including on-premises services, to otherwise eligible handicapped children on the basis of the fact that a child attends, or through his parents seeks to attend, a nonpublic school that is religious in nature or point of view, or includes religion in the content of its educational program, during the pendency of this litigation; and from enforcing any state rule, regulation, or policy to the contrary ....; and that Plaintiffs be awarded their reasonable costs and attorneys' fees incurred herein, pursuant to 42 U.S.C. § 1988, as

supported by fee application to be filed subsequently."

[Docket Nos. 3 & 20].

Plaintiffs also filed a Motion for Partial Summary Judgment, seeking "an Order granting summary judgment in Plaintiffs' favor on Count V of the Plaintiffs' Complaint" [Docket No. 67]. (Count V of the Complaint contained Plaintiff's IDEA claim. Docket No. 1, at ¶ 55.) In Plaintiffs' Memorandum of Law in Support of their Motion for Partial Summary Judgment, Plaintiffs argued that this case was controlled by *Zobrest v. Catalina Foothills School District*, 509 U.S. 1, 113 S.Ct. 2462, 125 L.Ed.2d 1 (1993). Plaintiffs argued that any reliance on earlier cases like *Meek v. Pittenger*, 421 U.S. 349, 95 S.Ct. 1753, 44 L.Ed.2d 217 (1975), *Aguilar v. Felton*, 473 U.S. 402, 105 S.Ct. 3232, 87 L.Ed.2d 290 (1985), and *Grand Rapids v. Ball*, 473 U.S. 373, 105 S.Ct. 3248, 87 L.Ed.2d 267 (1985), was misplaced. Docket No. 68, at 24–26.

The State Defendants moved to Dismiss Plaintiffs' claims on various grounds [Docket No. 13]. The School Districts also filed Motions to Dismiss Plaintiff's Complaint pursuant to Rule 12 of the Federal Rules of Civil Procedure [Docket Nos. 14 & 15].

### *Decision on Early Motions*

The District Court issued its decision on those Motions on March 26, 1997 [Docket No. 79]. *Peter v. Johnson*, 958 F.Supp. 1383 (D.Minn.1997). The Court denied Plaintiffs' Motion for Preliminary Injunction and Plaintiffs' Motion for Partial Summary Judgment. Defendants' Motion to Dismiss the IDEA Count (Count V), was granted. In addition, the Court dismissed Plaintiff Choice in Education Foundation, Inc. as a Plaintiff. The other Motions were denied.

In its Opinion, the District Court found that the Peters and the Westendorps had standing to bring their claims, even though

---

**2.** Under the IDEA, an "individual education plan" or "IEP" must be developed before special education services can be provided. An "IEP" is "a written individualized educational plan" for a pupil "based on an assessment of the pupil's performance, presenting problems and its effect on learning in appropriate settings." Minn. Rule 3525.0200, subp. 6a. An IEP "sets out the

child's present educational performance, establishes annual and short-term objectives for improvements in that performance, and describes the specially designed instruction and services that will enable the child to meet those objectives." *Honig v. Doe*, 484 U.S. 305, 311, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988).

Sarah Peter and Aaron Westendorp were not currently enrolled in private schools. *Peter,* 958 F.Supp. at 1391. The Court then construed Plaintiffs' Section 1983 claims to be alleged against the State Defendants in their official capacities, and dismissed Plaintiffs' claims to the extent that they were asserted against the State Defendants in their individual capacities. The District Court ruled that because Plaintiffs sought injunctive relief against the State Defendants in their official capacities for alleged violations of federal law, "the § 1983 claims against the state defendants are not barred by the Eleventh Amendment." *Id.* at 1394 & n. 1.

After noting that "[a]n underlying constitutional right must exist before a cause of action under section 1983 will lie," the District Court then proceeded to analyze Plaintiffs' allegations that Defendants violated the Freedom of Speech and Free Exercise of Religion Clauses of the First Amendment, and the Equal Protection Clause of the Fourteenth Amendment. *Id.* at 1394–95. The District Court concluded that the allegations were sufficient to avoid dismissal, but it denied Plaintiffs' Motions for Summary Judgment or a Preliminary Injunction

As to rights under the RFRA, the District Court ruled: "The parties agree that the pending motions may be resolved without addressing the RFRA claim; thus, the court does not address the RFRA claim or constitutional challenge [to the RFRA] at this time." *Peter,* 958 F.Supp. at 1395.[3]

With respect to Plaintiffs' IDEA claim, the District Court stated:

> "Whereas the plaintiffs argue that the plain language of Minnesota Rule 3525.1150 and the school districts' denial of services to Sarah Peter and Aaron Westendorp violates the U.S. Constitution by allegedly discriminating in the provision of special education services on the basis of the religious content and viewpoint of a private school's instructional programs, the plaintiffs accept defendants' factual statements for purposes of their motion for

partial summary judgment on the IDEA claim. Thus, for the purposes of this motion, the plaintiffs accept that the school districts deny on-site services to all children attending private schools, religious or nonreligious. Plaintiffs maintain that the IDEA and its regulations mandate that on-site special education services be provided at nonpublic schools to students whose special education needs are such that they require individualized paraprofessional services in their regular classrooms."

*Id.* at 1396. The District Court then held:

> "[T]he statute and its regulations do not require the State defendants or local school districts to provide on-site paraprofessional services to the plaintiffs at private schools as a component of their individualized education program. Because the court decides that there is no individual entitlement to services under the IDEA and its regulations for unilaterally-placed private school children with disabilities who require individualized services, the court need not address whether the Establishment Clause provides a justification for the denial of publicly funded on-site assistance. The court concludes that the defendants are entitled to partial summary judgment on the IDEA count."

*Id.* at 1399–1400.

With respect to Plaintiffs' Motion for Preliminary Injunction, the District Court ruled: "Because the court has determined that the IDEA and its regulations do not require that the State and local school districts provide such services, the court considers plaintiffs' motion only as to its remaining constitutional and RFRA claims." *Id.* at 1400. After balancing the four factors set forth in *Dataphase Sys., Inc. v. C L Sys., Inc.,* 640 F.2d 109, 114 (8th Cir.1981), the District Court ruled:

> "In balancing the Dataphase factors, the court has considered the broad discretion that the state and local school districts have in providing educational services and defining educational policy.... *The court*

---

**3.** Had the State Defendants acquiesced in applying the RFRA as urged by Plaintiffs, it would have been inconsistent with the later decision of the Supreme Court determining that the RFRA

was unconstitutional. *City of Boerne v. P.F. Flores,* 521 U.S. 507, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997).

*concludes that even if the plaintiffs were to prevail on their constitutional and federal claims, it would be inclined to enjoin enforcement of the regulations and policies to reflect the policies to which the defendants urge they currently adhere: that defendants do not provide on-site paraprofessional services to any student voluntarily attending private school, regardless of the school's religious or nonreligious nature.* Thus, plaintiffs' motion for preliminary injunction is denied."

*Id.* at 1401(emphasis supplied).

### Supreme Court Agostini Decision

On June 23, 1997, the Supreme Court issued its opinion in *Agostini v. Felton,* 521 U.S. 203, 117 S.Ct. 1997, 138 L.Ed.2d 391 (1997). (The Supreme Court had granted a Writ of Certiorari on January 17, 1997). In the *Agostini* opinion, the Supreme Court expressly overruled its decision in *Aguilar v. Felton,* and effectively overruled the other authority which the State Defendants had felt compelled their Rules. The State Defendants promptly advised Plaintiffs that they would acquiesce in the *Agostini* decision.

On June 26, 1997, Plaintiffs Aaron Westendorp, Krista Westendorp and Douglas Westendorp brought a new Motion for Preliminary Injunction, relying on the *Agostini* decision [Docket No. 89]. That Motion sought an order pursuant to Rule 65(a) of the Federal Rules of Civil Procedure as follows:

"Ordering defendants to provide special education services to plaintiff Aaron Westendorp, in accordance with his needs, on the premises of Calvin Christian School, a private religious school, during the pendency of this litigation; and from enforcing Minnesota Rule 3525.1150 or any other state or local rule, regulation, policy, practice, or custom, that operates to prohibit provision of on-site special education services to children with disabilities attending private religious schools, until further notice by Order of this Court; ... and that Plaintiffs be awarded their reasonable costs and attorneys' fees incurred herein, pursuant to 42 U.S.C. § 1988, as supported

by fee application to be filed subsequently."

The State Defendants immediately advised Plaintiffs in writing that "[i]n light of the recently decided *Agostini v. Felton* case, the Commissioner intends to no longer enforce Minn. R. 3525.1150 to prevent school districts from providing special education services on-site at sectarian schools and will take action to repeal the Rule to the extent it is inconsistent with *Agostini*." Docket No. 95, at 1–2; Docket No. 96, Ex. A. The State Defendants also agreed "to work in good faith with the Minnesota Board of Education to achieve the amendment of Rule 3525.1150, subpart 2, by striking the following sentence: 'Special education services provided indirectly or directly to the pupil must be provided at a neutral site that is consistent with Minnesota Statutes, section 123.932, subdivision 9.'" Docket No. 97 at ¶ 3.

### State Defendants Settlement With Plaintiffs

On July 31, 1997, the remaining Plaintiffs and the State Defendants stipulated to the entry of a Preliminary Injunction enjoining the Commissioner of Children, Families and Learning from enforcing Rule 3525.1150 to prohibit School District Defendants from providing Plaintiffs on-site special education and related services at religious schools [Docket No. 97]. On August 5, 1997, the District Court granted a preliminary injunction as follows: "The State Defendants are hereby enjoined and restrained from enforcing Rule 3525.1150 insofar as it prohibits provision of special education services to Plaintiffs Sarah Peter and Aaron Westendorp on the premises of a private religious school." [Docket No. 98].

The State Defendants contend that this Settlement renders the lawsuit moot as to them, and that since the issues between Plaintiffs and the School Districts have been resolved, they believe that the entire matter should be dismissed. Plaintiffs disagree. Paulsen Affidavit, paragraph 39 b.

### Peter Settlement With School District:

Plaintiffs Joan Peter and Sarah Peter and Buffalo School District No. 877 also reached a Settlement Agreement. Under the terms of their agreement, the School District

agreed to pay $31,500 to the Peters for damages including attorneys' fees. It also agreed to rescind policies which would prevent provision of in-classroom services at private schools in that District, and to provide Sarah Peter such services at her private school. The Peters agreed to dismiss their Complaint against the School District with prejudice. Judgment was entered on their Stipulation, dismissing their claims against the School District with prejudice [Docket Nos. 112, 113].

### Westendorp Claims Dismissed

The Westendorps' new Motion for Preliminary Injunction against Edina School District No. 273 remained for decision. [Docket No. 93]. On August 12, 1997, the District Court issued an Order denying the Westendorps' Motion for Preliminary Injunction. Docket No. 101. The District framed the issue before it as follows:

> "The issue now presented to this court is whether plaintiff Westendorp has made the requisite showing for this court to issue a preliminary injunction *requiring* defendant Independent School District No. 273 (Edina, Minnesota), to provide on-site, individualized, paraprofessional services to Westendorp at Calvin Christian School, which is the religious school of Westendorp's choice."

Docket No. 101, at 4–5 (emphasis in original). The District Court then ruled:

> "The court's decision with respect to the injunction issue has not changed from this court's earlier decision *for the reasons already stated in Peter v. Johnson*, 958 F.Supp. 1383 (D.Minn.1997).... The remaining claims before the court are plaintiff's section 1983 claims alleging constitutional violations based on the school district's alleged differential treatment between children who attend nonpublic nonreligious schools and children who attend nonpublic religious schools. There has been no showing on the part of plaintiff that he is substantially likely to prevail on these constitutional claims since there is no evidence in the record that Independent School District No. 273 treated children differently on the basis of whether they attended nonpublic nonreligious

schools or nonpublic religious schools, notwithstanding the language of Rule 3525.1150. Throughout this litigation, Independent School District No. 273's position has been that it treats all nonpublic school children the same and does not make distinctions in the provision of services based upon the religious nature of the school."

*Id.* at 6–7. In a subsequent footnote, the District Court stated:

> "Prior to the Supreme Court's decision in *Agostini*, the school district provided on-site services to preschool children who attended nonpublic nonreligious schools but did not provide such services to preschool children who attended nonpublic religious schools. Since the Supreme Court's decision, the school district will provide such services to preschool children who attend nonpublic religious schools."

*Id.* at 7 n. 2. The District Court ruled that "Plaintiff has not demonstrated a likelihood of success on the merits as to his constitutional challenges which were pleaded in the complaint." *Id.* at 8.

On August 20, 1997, the Plaintiffs moved the District Court "for leave to file and serve a Supplemental Complaint." Docket No. 102. That motion, brought pursuant to Rule 15 of the Federal Rules of Civil Procedure, sought to add a state law claim, asserting that the conduct of District No. 273 and District No. 877 violates Minn.Stat. § 120.17, Minn.Stat. § 123.931, and Minnesota Rule 3525.1150. Docket No. 104, Ex. G. On August 28, 1997, the Westendorps moved the District Court "for clarification of the Court's Order dated August 12, 1997, denying Plaintiffs' motion for preliminary injunction." Docket Nos. 107 & 108.

The District Court granted summary judgment against the Westendorps, in favor of the School District. It denied the Westendorps' new Motion for Preliminary Injunction against the School District [Docket No. 109]. By Order dated September 2, 1997, which attached a Stipulation signed by counsel for the Westendorps and District No. 273, the District Court granted the Westendorps' motion to file a supplemental pleading and the

motion for clarification of the Court's Order of August 12, 1997. In the same Order of September 2, 1997, the District Court then rejected the supplemental claim and held "[t]hat the Court's Order of August 12, 1997 denying plaintiffs' motion for preliminary injunction, shall, as amended by this Order, constitute the final summary judgment of the Court resolving all of plaintiffs' claims against defendant [District No. 273] on the merits." The District Court ruled: "Pursuant to Fed.R.Civ.P. 56, and based on all the pleadings, files, records, proceedings and arguments in the case, the Court therefore grants summary judgment to defendant [District No. 273] against plaintiffs AARON WESTENDORP, KRISTA WESTENDORP, and DOUGLAS WESTENDORP on all counts, including the supplemental state law claim." Docket No. 109. Judgment was entered on the District Court's Order on September 2, 1997. Docket No. 110. The Westendorps have appealed that judgment to the Court of Appeals for the Eighth Circuit.

### Motion for Attorneys' Fees

■ This Court has jurisdiction over the collateral issue of the Motion for Attorneys' fees, notwithstanding the appeal by the Westendorps from the judgment dismissing their Complaint against the School District. *Little Rock v. Arkansas,* 127 F.3d 693 (8th Cir. 1997); *See also Obin v. District No. 9 of Int'l Assn. Of Machinists,* 651 F.2d 574, 583 (8th Cir.1981); Local Rule 54.3.

Plaintiffs' Application for an Award of Attorneys' Fees and Expenses Against the State Defendants was filed on January 12, 1998 [Docket No. 123]. (The parties had jointly requested in a stipulation that the District Court give them time to attempt to reach an agreement on attorneys' fees, and agreed that if they failed "a briefing schedule would be set concerning the attorneys' fees issue if this issue is not resolved at that time." Docket No. 97 at ¶ 8.) In a footnote to their initial Memorandum, Plaintiffs stated: "In the event, however, the Court is not persuaded by our arguments on fee entitlement based solely on the record provided, we continue to request a limited ability to conduct discovery on the effect of this litigation on the state Defendants to further prove the catalyst theory." Plaintiffs' initial Memorandum, fn. 15, p. 16 of 39. Leave of Court was not required to permit Plaintiffs to have taken discovery prior to presenting their Motion for Attorneys' fees.[4]

We are satisfied that the substantial submissions by the parties were sufficient and complete. "A request for attorney's fees should not result in a second major litigation." *Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). *See also Associated Builders v. Orleans Parish,* 919 F.2d 374 at 377–378 (5th Cir.1990). Plaintiffs were permitted to submit Memoranda in support of their Motion which exceeded page limitations. In addition, their Memoranda contained lengthy single space footnotes, and incorporated by reference many other materials, including more than 75 pages of single spaced correspondence containing legal argument. Plaintiffs' supporting materials included three three-ring binders filled with Affidavits and Exhibits, supplemented by additional Affidavits filed with their Reply. A summary of the contents of the three-ring binders is in the form of a nine-page "Annotated Exhibit List to Fee Application." This Court denied Defendants' Motion to strike Plaintiffs' filings, and fully considered all of the materials submitted.

### DISCUSSION

■ Under federal law, a "prevailing party" is permitted to recover reasonable attorneys' fees in any action brought pursuant to 42 U.S.C. § 1983. The statute reads as follows:

"In any action or proceeding to enforce a provision of section[ ] ... 1983 ... of this title, ... [or] the Religious Freedom Restoration Act of 1993 ... the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs ...."

---

4. Even if permission for discovery were required, it could not be sought by a footnote in a Memorandum, nor conditionally as stated.

42 U.S.C. § 1988(b). Analytically, the task of the Court is to first determine whether the Plaintiff is a "prevailing party," an issue as to which *Farrar v. Hobby,* 506 U.S. 103, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992) is particularly instructive. If so, the Court then determines the amount of a reasonable attorneys' fee that would be appropriate, taking into consideration factors identified in *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). There are also many instructive opinions of the Court of Appeals for the Eighth Circuit on both subjects.

The attorneys seeking recovery in this matter provided legal services on behalf of all of the Plaintiffs, against all of the Defendants. The Motion for attorneys' fees, however, is brought only by the remaining Plaintiffs,[5] and it seeks recovery of attorneys' fees only against the State Defendants. Analysis is facilitated by considering each of the Plaintiffs *vis-a-vis* each of Defendants.

Plaintiff Choice in Education Foundation, Inc. was dismissed with prejudice by the Order of the District Court of March 26, 1997. *Peter v. Johnson,* 958 F.Supp. 1383 (D.Minn.1997). No contention is made that this Plaintiff is a prevailing party against any Defendant, and it does not seek fees in this matter.

The Westendorps did not prevail in their claim against their School District. Summary Judgment was entered against them, from which they have appealed. No claim is made that they are prevailing parties against their School District.

■ The Peters reached a Settlement Agreement with the School District, and dismissed their claim against them with prejudice. The mere fact of settlement does not prevent a party from being a prevailing party. However, the Peters have received from the School District an amount to compensate them for all attorneys' fees incurred in their dispute with the School District, and do not seek additional fees from it.

■ The Motion contends that the Westendorps are prevailing parties against the State Defendants. We cannot conclude that the consent Judgment against the State Defendants resulted in a material alteration of the relationship between the Westendorps and the State Defendants or the School District. The relief that the Westendorps obtained from the State did not directly benefit them at the time of the judgment or settlement. For the reasons stated in *Farrar v. Hobby,* 506 U.S. 103, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992), the Westendorps are not prevailing parties. In *Farrar,* the Supreme Court held:

"Therefore, to qualify as a prevailing party, a civil rights Plaintiff must obtain at least some relief on the merits of his claim. The Plaintiff must obtain an enforceable judgment against the Defendant from whom fees are sought, or comparable relief through a consent decree or settlement. Whatever relief the Plaintiff secures must directly benefit him at the time of the judgment or settlement. Otherwise the judgment or settlement cannot be said to 'affec[t] the behavior of the Defendant toward the Plaintiff.' Only under these circumstances can civil rights litigation effect 'the material alteration of the legal relationship of the parties' and thereby transform the Plaintiff into a prevailing party. In short, a Plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the Defendant's behavior in a way that directly benefits the Plaintiff."

*Farrar,* 506 U.S. at 111–112, 113 S.Ct. 566 (internal citations omitted). *See also Warner v. Indep. School Dist. 625,* 134 F.3d 1333 (8th Cir.1998).

■ The Order of the District Court, based upon the Stipulation of the parties, enjoined the State Defendants "from enforcing Rule 3525.1150 insofar as it prohibits provision of special education services to Plaintiffs Sarah Peter and Aaron Westendorp on the premises of a private religious school." As we have seen, even in the presence of this consent Injunction against the State Defendants, the School District would

---

**5.** As noted earlier, Choice in Education Foundation, Inc. had been dismissed as a Plaintiff by the District Court as part of its March 27, 1998 Order.

not provide special education services to Aaron Westendorp at a private religious school, and the District Court did not conclude that it was required to do so.

■ The issue of providing special education services is shown to be independent of the State Rule which was challenged. Although the Peters did obtain direct relief meeting the *Farrar* standards, they obtained that relief in their settlement with the School District, not from the State, so they were not prevailing parties *vis-a-vis* the State Defendants, under the *Farrar* standard.

■ The State Defendants contend that the Rule challenged by the Plaintiffs, and related statutes, was initially mandated by decisions of the Supreme Court such as *Meek v. Pittenger*, 421 U.S. 349, 95 S.Ct. 1753, 44 L.Ed.2d 217 (1975), *Aguilar v. Felton*, 473 U.S. 402, 105 S.Ct. 3232, 87 L.Ed.2d 290 (1985), and *Grand Rapids v. Ball*, 473 U.S. 373, 105 S.Ct. 3248, 87 L.Ed.2d 267 (1985). They contend that *until* the Supreme Court announced the new law in the *Agostini* decision, they were bound to follow the law as it had been decided prior to that decision.

Plaintiffs argue that the holdings in those cases were effectively reversed by the decision of the Supreme Court in *Zobrest v. Catalina Foothills School District*, 509 U.S. 1, 113 S.Ct. 2462, 125 L.Ed.2d 1 (1993), and that therefore the Defendants were under a duty to alter the Rule which is challenged in this litigation, *in anticipation* of what the Supreme Court would rule in *Agostini*.

### Agostini Analysis

We set forth below the historical background of the *Agostini* decision. That analysis shows that Plaintiffs were correct that *Zobrest* had set the stage for change in the underlying law. But the opinion of the Supreme Court in *Agostini* also substantiates the claim of the State Defendants that they acted in accordance with their constitutional duties by following the prior holdings of the Supreme Court until it announced the change. Attorneys' fees are therefor not warranted for this additional reason.

In *Aguilar v. Felton*, 473 U.S. 402, 105 S.Ct. 3232, 87 L.Ed.2d 290 (1985), the United States Supreme Court addressed the question of whether the Establishment Clause of the First Amendment barred the City of New York's practice of using federal funds to pay the salaries of public employees who teach in parochial schools. *Id.* at 404, 105 S.Ct. 3232. In that case, six taxpayers sued to enjoin the further distribution of funds to programs involving educational instruction on the premises of parochial schools, alleging that a federal program administered by the City of New York violated the Establishment Clause. *Id.* at 407, 105 S.Ct. 3232. The City of New York had provided instructional services to parochial school students on the premises of parochial schools since 1966. *Id.* at 406, 105 S.Ct. 3232. The program at issue in *Aguilar* authorized the Secretary of Education to distribute financial assistance to local educational institutions to meet the needs of educationally deprived children from low income families. *Id.* at 404, 105 S.Ct. 3232. Under those facts, the *Aguilar* Court held that the Establishment Clause barred the City of New York from sending public school teachers into parochial schools to provide remedial education to disadvantaged students. On remand, the District Court for the Eastern District of New York entered a permanent injunction enjoining the Board of Education of the City of New York "from using public funds for any plan or program ... to the extent that it requires, authorizes or permits public school teachers and guidance counselors to provide teaching and counseling services on the premises of sectarian schools with New York City." *Agostini v. Felton*, 521 U.S. 203, ——, 117 S.Ct. 1997, 2005, 138 L.Ed.2d 391 (1997).

In the companion case of *School District of Grand Rapids v. Ball*, 473 U.S. 373, 105 S.Ct. 3248 (1985), the Supreme Court held unconstitutional under the Establishment Clause two remedial and enhancement programs operated by the Grand Rapids Public School District, in which classes were provided to private school children at public expense in classrooms located in and leased from the local private schools. In a case decided ten years earlier, the Supreme Court also invalidated a state program that offered, *inter alia*, guidance, testing, and remedial and therapeutic services performed by public em-

ployees on the premises of parochial schools. *Meek v. Pittenger,* 421 U.S. 349, 352–53, 95 S.Ct. 1753, 44 L.Ed.2d 217 (1975).

In *Agostini v. Felton,* 521 U.S. 203, 117 S.Ct. 1997, 138 L.Ed.2d 391 (1997), a 5–4 decision handed down by the Supreme Court on June 23, 1997, the petitioners—the very parties bound by the injunction in *Aguilar v.. Felton,* 473 U.S. 402, 105 S.Ct. 3232, 87 L.Ed.2d 290 (1985)—sought relief from its operation. *Agostini,* 521 U.S. at ——, 117 S.Ct. at 2003. The petitioners in *Agostini* asserted that *"Aguilar* cannot be squared" with the Supreme Court's "intervening Establishment Clause jurisprudence" and asked the Court to "explicitly recognize what [its] more recent cases already dictate: *Aguilar* is no longer good law." *Id.* In that procedural context, the majority of the Justices in *Agostini* concluded: "We agree with petitioners that *Aguilar* is not consistent with our subsequent Establishment Clause decisions and further conclude that, on the facts presented here, petitioners are entitled under Federal Rule of Civil Procedure 60(b)(5) to relief from the operation of the District Court's prospective injunction." *Agostini,* 521 U.S. at ——, 117 S.Ct. at 2003.

The facts giving rise to the *Agostini* decision are fairly straightforward. In October and December of 1995, the petitioners—the Board of Education and a new group of parents and parochial school students entitled to Title I services—filed motions in the District Court seeking relief from the permanent injunction entered by the District Court on remand from the Supreme Court's decision in *Aguilar. Agostini,* 521 U.S. at ——, 117 S.Ct. at 2006. Petitioners argued that relief was proper under Rule 60(b)(5) and the Supreme Court's decision in *Rufo v. Inmates of Suffolk County Jail,* 502 U.S. 367, 112 S.Ct. 748, 116 L.Ed.2d 867 (1992), because the "decisional law [had] changed to make legal what the [injunction] was designed to prevent." *Agostini,* 521 U.S. at ——, 117 S.Ct. at 2006. In particular, the petitioners pointed to the statements of five Justices in *Board of Ed. of Kiryas Joel Village School Dist. v. Grumet,* 512 U.S. 687, 114 S.Ct. 2481, 129 L.Ed.2d 546 (1994), calling for the over-

ruling of *Aguilar. Agostini,* 521 U.S. at ——, 117 S.Ct. at 2006.

The District Court in *Agostini* denied the Rule 60(b) motion. The District Court recognized that petitioners, " 'at bottom,' 'sought a procedurally sound vehicle to get the [propriety of the injunction] back before the Supreme Court,' " and concluded that " 'the Board ha[d] properly proceeded under Rule 60(b) to seek relief from the injunction.' " *Agostini,* 521 U.S. at ——, 117 S.Ct. at 2006 (citation omitted). Despite its observations that " 'the landscape of Establishment Clause decisions has changed,' " and that " '[t]here may be good reason to conclude that *Aguilar's* demise is imminent,' " the District Court denied the Rule 60(b) motion on the merits because *Aguilar's* demise had " 'not yet occurred.' " *Agostini,* 521 U.S. at ——, 117 S.Ct. at 2006 (citation omitted). The United States Court of Appeals for the Second Circuit " 'affirmed substantially for the reasons stated in' " the District Court's opinion. *Agostini,* 521 U.S. at ——, 117 S.Ct. at 2006 (citation omitted).

The United States Supreme Court granted certiorari, and reversed. The Supreme Court noted that, in *Rufo,* it held that it is appropriate to grant a Rule 60(b)(5) motion when the party seeking relief from an injunction or consent decree can show "a significant change either in factual conditions or in law." *Agostini,* 521 U.S. at ——, 117 S.Ct. at 2006 (*quoting Rufo,* 502 U.S. at 384). Noting that "petitioners' ability to satisfy the prerequisites of Rule 60(b)(5) hinges on whether our later Establishment Clause cases have so undermined *Aguilar* that it is no longer good law," *Id.* at 2007, 117 S.Ct. 1997, the *Agostini* Court held that its "more recent cases have undermined the assumptions upon which *Ball* and *Aguilar* relied." *Id.* at 2010, 117 S.Ct. 1997.

"As we have repeatedly recognized, government inculcation of religious beliefs has the impermissible effect of advancing religion. Our cases subsequent to *Aguilar* have, however, modified in two significant respects the approach we use to assess indoctrination. First, we have abandoned the presumption erected in *Meek* and *Ball* that the placement of public employees on

parochial school grounds inevitably results in the impermissible effect of state-sponsored indoctrination or constitutes a symbolic union between government and religion. In *Zobrest v. Catalina Foothills School Dist.*, 509 U.S. 1, 113 S.Ct. 2462, 125 L.Ed.2d 1 (1993), we examined whether the IDEA ... was constitutional as applied to a deaf student who sought to bring his state-employed sign-language interpreter with him to his Roman Catholic high school. We held that this was permissible, expressly disavowing the notion that 'the Establishment Clause [laid] down [an] absolute bar to the placing of a public employee in a sectarian school.' .... Because the only government aid in *Zobrest* was the interpreter, who was herself no inculcating any religious messages, no government indoctrination took place and we were able to conclude that 'the provision of such assistance [was] not barred by the Establishment Clause.' ....

Second, we have departed from the rule relied on in *Ball* that all government aid that directly aids the educational function of religious schools is invalid. In *Witters v. Washington Dept. of Servs. for Blind*, 474 U.S. 481, 106 S.Ct. 748, 88 L.Ed.2d 846 (1986), we held that the Establishment Clause did not bar a State from issuing a vocational tuition grant to a blind person who wished to use the grant to attend a Christian college ....

.... We do not see any perceptible (let alone dispositive) difference between a student receiving remedial instruction in a classroom on his sectarian school's campus and one receiving instruction in a van parked just at the school's curbside. To draw this line based solely on the location of the public employee is neither 'sensible' nor 'sound,' and the Court in *Zobrest* rejected it."

*Agostini*, 521 U.S. at ——–——, 117 S.Ct. at 2011–12. The Supreme Court concluded: "We therefore overrule Ball and Aguilar to the extent those decisions are inconsistent with our current understanding of the Estab-

lishment Clause." *Agostini*, 521 U.S. at ——, 117 S.Ct. at 2017.

As to the *Kiryas Joel* precedent, the Supreme Court stated: "the statements made by five Justices in *Kiryas Joel* do not, in themselves, furnish a basis for concluding that our Establishment Clause jurisprudence has changed." *Agostini*, 521 U.S. at ——, 117 S.Ct. at 2007. According to the *Agostini* Court:

"Five Justices joined opinions [in *Kiryas Joel*] calling for reconsideration of *Aguilar*.... But the question of *Aguilar's* propriety was not before us. The views of five Justices that the case should be reconsidered or overruled cannot be said to have effected a change in Establishment Clause law."

*Id.*

### Duty of State Defendants Prior to Reversal

The *Agostini* Court stated that "it was *Zobrest*—and not this case—that created 'fresh law,'" *Id.* at 2011, 117 S.Ct. 1997, and "after *Zobrest* we no longer presume that public employees will inculcate religion simply because they happen to be in a sectarian environment." *Id.* at 2016, 117 S.Ct. 1997. But this does not yield the conclusion that it would have been proper for the State Defendants to anticipate the change, any more than it would have been proper for the lower courts in *Agostini* to do so. The *Agostini* Court concluded that the lower courts were correct not to overrule the *Aguilar* line of cases on their own, and had the duty to follow those precedents until overruled:

"We do not acknowledge, and we do not hold, that other courts should conclude our more recent cases have, by implication, overruled an earlier precedent. We reaffirm that 'if a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, *the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions.' Rodriguez de Quijas*, 490 U.S. at 484, 109 S.Ct. at 1921–1922.[6] ... *The trial court* acted

---

6. *Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 484, 109 S.Ct. 1917,

104 L.Ed.2d 526 (1989).

within its discretion in entertaining the motion with supporting allegations, but it *was also correct to recognize that the motion had to be denied unless and until this Court reinterpreted the binding precedent."*

*Agostini,* 521 U.S. at ——, 117 S.Ct. at 2017 (emphasis supplied).[7] This reasoning was directly applied recently by the Fourth Circuit Court of Appeals: "Lower federal courts have repeatedly been warned about the impropriety of preemptively overturning Supreme Court precedent." *West v. Anne Arundel County, Maryland,* 137 F.3d 752, 760 (4th Cir.1998), citing the *Agostini* opinion.

### Catalyst Theory of Review

Plaintiffs state that they "have 'prevailed' completely against the State Defendants"[8] and that the "only remaining question for fee entitlement is whether Plaintiffs' lawsuit had anything to do with this excellent result." Defendants argue that Plaintiffs lawsuit did not have anything to do with the result. They argue that the State Defendants had originally adopted the challenged Rule in order to comply with Constitutional law as announced by the Supreme Court prior to the *Agostini* decision, and that immediately after that decision was rendered, they agreed not to enforce the Rule, in order comply with the change in law announced by the Supreme Court.

■ The positions of the parties may be taken as a general statement of the "catalyst theory" of denominating prevailing parties. Although some commentators have questioned the vitality of this theory after the *Farrar* decision,[9] it is regularly applied in this Circuit. The catalyst theory is meant to address situations like those presented in this case, where remedial action is taken prior to the conclusion of the suit. Even if that remedial action would render the suit moot, the plaintiff will be entitled to prevailing party status "if the lawsuit was a catalyst that brought about or prompted the defendant's remedial action." *A.J. v. Kierst,* 56 F.3d 849, 865 (8th Cir.1995). *See also, e.g. St. Louis Fire Fighters Ass'n v. St. Louis,* 96 F.3d 323, 331 (8th Cir.1996) ("Where a defendant voluntarily complies with a plaintiff's requested relief, thereby rendering the plaintiff's lawsuit moot, the plaintiff is a 'prevailing party' under section 1988 if his suit is a catalyst for the defendant's voluntary compliance and the defendant's compliance was not gratuitous, meaning the plaintiff's suit was neither frivolous, unreasonable nor groundless."); *Warner v. Independent School Dist. No. 625,* 134 F.3d 1333, 1337 (8th Cir.1998) ("a fee award may be appropriate under the catalyst theory if defendant provides a remedy to avoid litigating a federal claim."); *Little Rock School District v. Pulaski County,* 17 F.3d 260 (8th Cir.1994). (In *Kierst,* recovery under the catalyst theory was denied because it was not established that the plaintiff's suit was responsible for the remedial action taken by defendants.)

■ For the reasons already stated, we concluded that Plaintiffs are not prevailing parties using other standards. We also find that this litigation was not the catalyst for the action taken by the State Defendants, and that Plaintiffs are not prevailing parties when considered under the catalyst theory.

One of Plaintiffs' expert witnesses pointed out that "the policy of Section 1988 would be frustrated if Defendants in civil rights cases could litigate to the hilt, and upon realizing that they would not be successful, avoid an award of attorneys' fees by claiming to have been motivated by some extrinsic factor." This is among the reasons that it is necessary to review with care the claims of the parties as to whether the change in state

---

7. *See also Agostini,* 521 U.S. at ——, 117 S.Ct. at 2027 (Ginsburg, J., dissenting) ("The majority ... recognizes that *Aguilar* had not been overruled, but remained the governing Establishment Clause law, until this very day."); *Id.* at 2028 (Ginsburg, J., dissenting) ("[N]othing can disguise the reality that, until today, *Aguilar* had not been overruled. Good or bad, it was in fact the law.").

8. Although Plaintiffs disagree with entry of a final judgment against the State Defendants.

9. *See The Catalyst Theory of Civil Rights Fee Shifting After Farrar v. Hobby,* 80 Va. L.Rev. 1429 (1994).

enforcement policy was the result of the lawsuit, as Plaintiffs claim, or the result of the Supreme Court decision in *Agostini*, as Defendants claim, and we find.

■ "In deciding whether the litigation was a significant catalyst in prompting the [remedial] action, the district court conducts an 'intensely factual' inquiry." *Associated Builders v. Orleans Parish*, 919 F.2d 374, 378 (5th Cir.1990), (*quoting Posada v. Lamb County*, 716 F.2d 1066, 1072 (5th Cir.1983)). The resolution of the question of cause, or catalyst, is aided by taking into consideration the chronology of events. *Beard v. Teska*, 31 F.3d 942, 952 (10th Cir.1994); *Kansas Hospital Ass'n v. Whiteman*, 967 F.Supp. 452, 455 (D.Kan.1997).

## CHRONOLOGY [10]

| | |
|---|---|
| * May, 1997 | Agostini case pending in District Court |
| May 9, 1996 | Plaintiffs write demand letter to State Defendants |
| * May 21, 1996 | District Court opinion in Agostini case, adheres to Aguilar |
| July 26, 1996 | Plaintiffs file suit |
| * August 30, 1996 | Court of Appeals affirms District Court in Agostini case |
| * January 17, 1997 | Supreme Court grants Certiorari in Agostini |
| March 26, 1997 | District Court denies Plaintiffs' Motions for Summary Judgment and Preliminary Injunction |
| May 22, 1997 | Deposition of Wayne Erickson |
| * June 23, 1997 | Supreme Court decision in Agostini |
| June 24, 1997 | State Defendants write to Plaintiffs re Agostini opinion, suggest case be put "on hold" until June 27 to assess Agostini implications |
| June 24, 1997 | Plaintiffs reply in letter to State Defendants, proposing agreed upon declaratory judgment and permanent injunction against State Defendants and School District Defendants. |
| June 26, 1997 | Plaintiffs serve Motion for Preliminary Injunction |
| June 26, 1997 | State Defendants write to Plaintiffs: "In light of the recently decided Agostini v. Felton case, the Commissioner intends to no longer enforce Minn. R. 3525.1150 ... and will take action to repeal the Rule to the extent it is inconsistent with Agostini." State Defendants state they believe no attorneys' fees should be recovered, because "the change in policy results from the Supreme Court overruling the precedent on which the Rule was premised." |
| July 23, 1997 | School Districts oppose Plaintiffs' Motion for Preliminary Injunction |
| July 31, 1997 | State Defendants Stipulate with Plaintiffs for entry of Preliminary Injunction against State Defendants |
| August 5, 1997 | District Court enters stipulated Order for Preliminary Injunction against State Defendants. |
| September 2, 1997 | Summary Judgment granted against Westendorps, in favor of School District, and Judgment entered thereon |

**10.** Matters preceded by asterisk refer to developments in the *Agostini* case.

September 23, 1997     Stipulation of Dismissal With Prejudice of Peter claims against School District, and Judgment entered thereon

---

The chronology supports the conclusion that the action by State Defendants was taken as a result of the decision of the Supreme Court in *Agostini*, and not as a result of Plaintiffs' lawsuit. From the beginning, this case and the *Agostini* case were on parallel tracks. The decisions of the lower courts in *Agostini* were made consistent with the holdings in *Aguilar*, and so were the decisions of the State Defendants as it related to continued enforcement of challenged Rule 3523.1150. Promptly after the Supreme Court issued its opinion in *Agostini*, reversing the lower courts in that case, the State Defendants advised Plaintiffs that they were "reversing" themselves as well. This was fully in accordance with the duty, expressly stated in *Agostini*, that it is the prerogative of the Supreme Court itself to overrule its own decisions. Until they do so, the duty is to follow the precedent "until [the Supreme] Court reinterpreted the binding precedent." *Agostini*, 521 U.S. at ——, 117 S.Ct. at 2017; *See* analysis *supra*. pp. 1014–15.

The day after the Supreme Court decision, the State Defendants wrote to Plaintiffs to say that they were reviewing the implications of the opinion, and would like a brief time to think about it. Two days later, they advised that they would no longer enforce the Rule in light of the *Agostini* decision. The close temporal relationship between the two events supports a conclusion that the decision of the Supreme Court is the reason the State Defendants decided that they could no longer enforce the challenged Rule.

The District Court had denied Plaintiffs earlier Motion for a Preliminary Injunction. After the *Agostini* decision, Plaintiffs renewed their motion. In doing so they argued that the *Agostini* decision provided the legal basis upon which to return to the District Court to request an injunction, just as the State Defendants had concluded. This serves as additional confirmation of the impact of the *Agostini* decision on the resolution of the issues in the litigation.

Plaintiffs state that the May 22, 1997 deposition of Wayne Erickson provided new factual support for their renewed Motion for Preliminary Injunction, and that it was new factual events which caused their decision to renew the Motion. In support of that conclusion, we note that time entries relating to such a Motion began on May 28, 1997, prior to the announcement of the *Agostini* decision. But this timing could as easily be explained by the general knowledge that the Supreme Court would soon be issuing its decisions in *Agostini* and other cases.

The evidence does not persuade that it was knowledge gathered in discovery, and not *Agostini*, which provided the basis for the renewed Motion for a Preliminary Injunction. First, Plaintiffs do not show that resolution of their renewed Motion was dependent upon factual questions. Second, they make only the most general of references to the allegedly recently discovered facts. They cite only generally to the deposition of Wayne Erickson, a manager of the division of special education in the Minnesota Department of Education, without referring the Court to any specific questions or answers.

We have reviewed the deposition of Mr. Erickson, and do not find that he provided more than confirmation that the words in the challenged Rule mean what they appear to say. He testified that under the challenged Rule, it was not up to the school district to decide *whether* to provide special education services, but it was up to the school district to decide *where* to provide those services, so long as they were not provided in a religious school.

The State Defendants did not expressly announce to Plaintiffs that they would no longer enforce the Rule until after Plaintiffs had filed their June 26, 1997 Motion for Preliminary Injunction, but this is merely because the Motion was filed before the

State Defendants had a chance to tell Plaintiffs of their decision. The State Defendants had asked for three days—from June 24 to June 27—to study the *Agostini* decision. Had Plaintiffs wanted an earlier answer, it would have been available by telephone on June 26. Instead, they filed their Motion early.[11] In any event, it is not the Motion itself which was the catalyst for the decision of the State to acquiesce in a Preliminary Injunction. The State Defendants resisted the earlier Motion for Preliminary Injunction. The change in controlling law as announced in the *Agostini* decision explains the change in position.

Finally, we note the fact that the challenged Rule had been adopted in the first place to comply with earlier decisions of the Supreme Court. The conduct of the State Defendants in deciding to follow the *Agostini* decision is consistent with their earlier conduct when they adopted the Rule in order to follow earlier decisions of the Supreme Court. Put simply, the record shows that it is a desire to follow the rulings of the Supreme Court which has motivated the conduct of the State Defendants, not litigation. A fair reading of the chronology, and the related facts, substantiates this conclusion.

Prior to the decision of the Supreme Court in *Agostini*, the State Defendants acted in accordance with their duty, and followed the law as stated by the decisions of the Supreme Court in *Ball*, *Meek* and *Aguilar*. This was in accordance with their constitutional duty, just as the lower Courts did in *Agostini*. Promptly after the Supreme Court announced that it had changed the law in *Agostini*, the State Defendants declared their intention to follow the law as newly declared by the Supreme Court, again acting in a manner consistent with their constitutional duty. Since the decisions of the State Defendants were made for the purpose of complying with their duties, it may not be said that this lawsuit was a catalyst in causing such behavior.

## Other Considerations

In examining the issue as a question of whether this litigation was a catalyst for the change in state position, we conclude that it was not, and that Plaintiffs were not "prevailing" parties within the meaning of the 42 U.S.C. § 1988. Even if Plaintiffs were to be viewed as "prevailing parties" under other standards, we conclude that the unique circumstances of this case present "special circumstances" which warrant the denial of attorneys' fees as a matter of discretion. It is important to note that although the statute refers to the "discretion" of the District Court to award attorneys' fees, once it is determined that a Plaintiff is a "prevailing party" attorneys' fees should normally be awarded. *E.g. Borengasser v. Arkansas State Board of Education*, 996 F.2d 196 (8th Cir.1993). In *Jenkins v. Missouri*, 127 F.3d 709, 716 (8th Cir.1997), the Court stated: "We have observed that a district court's discretion to deny attorneys' fees to a prevailing plaintiff is narrow. Prevailing plaintiffs should ordinarily recover fees unless special circumstances would make such an award unjust".

At the time this suit was commenced, Defendants were acting in accordance with law established by the Supreme Court in prior precedent. The Supreme Court reversed that precedent and announced a different standard, and the Defendants changed to comply with the newly adopted standard. We have found no cases which directly address the question of attorneys' fees under this factual situation. The parties have pointed to analogous cases, which we consider below. The cases are not in agreement as to the consequences which should follow under circumstances where the law is unsettled at the time suit is commenced, is subsequently clarified, and the Defendants modify their behavior in accordance with the subsequent clarification. The results in these cases are not controlling of the result required in this case, which presents different duties of defendants.

---

11. In their letter of June 24, Plaintiffs had said that it would be necessary to file their Motion by June 27 in order to obtain relief in time for the fall. If Plaintiffs believed this was true, it does not explain why the Motion was filed on June 26.

In *Goehring v. Brophy*, 94 F.3d 1294 (9th Cir.1996) (*cert. denied*, — U.S. ——, 117 S.Ct. 1335, 137 L.Ed.2d 495 (1997)), suit was commenced challenging mandatory student fees in June of 1992. In February, 1993, the California Supreme Court decided, in a different case, that the fees were unconstitutional, and on October 4, 1993, that decision became final. On November 4, 1993, the Defendants in the federal action changed their policy. On July 11, 1994, the case was dismissed as moot. On August 20, 1994, Plaintiffs sought attorneys' fees. The Court of Appeals for the Ninth Circuit affirmed the denial of attorneys' fees, concluding that Plaintiffs had failed to establish a "causal link" between the law suit and the decision of the state to alter its policy. "The changes made by the University to its student fee policy were made to comply with both the letter and the spirit of the [California Supreme Court] decision." *Id.* at 1304. To the same effect *see Kansas Hospital Ass'n v. Whiteman*, 967 F.Supp. 452 (D.Kan.1997).

In *Arkansas Community Org. for Reform Now v. Arkansas State Board of Optometry*, 468 F.Supp. 1254 (E.D.Ark.1979) (Henley, Eisele, Richard S. Arnold, JJ.), the opposite result was reached, on similar facts.[12] Plaintiffs challenged Arkansas laws which prohibited advertising by optometrists. When suit was commenced, the law was unsettled. After a decision of the Supreme Court resolved the issue, the defendants consented to an Order declaring the statutes to be unconstitutional, and enjoining them from enforcing the statutes. Defendants argued that no attorneys' fees should be recovered "in light of the unsettled state of the law at the time of the filing of the complaint, and in light of the dispatch with which the Defendants moved toward settlement once the Supreme Court spoke definitively on the issue of professional advertising." *Arkansas*, 468 F.Supp. at 1257. The three judge Court rejected this argument, reasoning as follows:

"The legislative history, however, makes it clear that the purpose of the Attorney's Fees Act was to ensure that individual

Plaintiffs, as 'private attorneys general,' be able to assert and vindicate their civil rights in the courts.... If the law is unsettled, the need for court action to clarify the law and to protect the interest of the Plaintiffs may be greater, not less, than when the rights and duties of the parties are clear. The purpose of the Act is to ensure the enforcement of Plaintiffs' rights, not to punish recalcitrant Defendants. This purpose is served if fees are awarded to successful litigants in litigation which defines or redefines the law."

*Id.*

The Court of Appeals for the Sixth Circuit affirmed a District Court opinion awarding attorneys' fees under circumstances similar to the *Arkansas* case. *Putnam v. Davies*, 149 F.3d 1184 (6th Cir.1998) (unpub. op.), affirming 960 F.Supp. 1268 (S.D.Ohio, 1997). In that case, the suit challenged Ohio law which authorized seizure of an innocent owner's car if the driver was convicted of a second offense for drunken driving. While the suit was pending, the Ohio Supreme Court declared the law unconstitutional. The State Defendants urged that the suit was moot. The District Court disagreed, and entered a judgment in accordance with the decision of the Ohio Supreme Court, and also awarded attorneys' fees. It concluded:

"This Court will not allow the timing of the issuance of the court's order to negate the status of Plaintiffs as 'prevailing parties,' which in turn, might disallow an award of fees and costs. For the Court to so hold would discourage counsel from accepting cases seeking declaratory judgment and injunctive relief involving the enforcement of alleged unconstitutional state statutes when the same issues are being litigated in the state courts. Such a result would not be in keeping with the interest that Congress ought to promote in the fee statute.

"The fact that others were engaged in parallel efforts to declare the statute unconstitutional in the state courts and prevailed first does not detract from the effort

---

12. The decision of the distinguished Court in *Arkansas Community Organizations* was rendered in 1979, soon after the adoption of Section 1988, and prior to the decisions of the Supreme

Court in *Hensley* and *Farrar* which have provided further guidance. The opinion thus does not consider the "catalyst" method of analysis.

of the attorneys in trying this case in federal court. Litigation such as this challenging the constitutionality of state statutes can take years, and parallel efforts in state and federal courts should not be discouraged. These parallel efforts would be strongly discouraged if one party's attorneys would be deprived of a statutory award of attorney's fees based merely on the fortuitous timing of the two court's judgments."

960 F.Supp. at 1273. The Court of Appeals adopted this reasoning. 149 F.3d 1184, n. 8.

■ The "good faith" of the Defendants may not be used to deny an award of attorneys' fees. *E.g. Pickett v. Milam,* 579 F.2d 1118 (8th Cir.1978). We think there is a difference between the good faith search for a correct response presented in these earlier cases, and the facts presented in this case. Here, the law was not unsettled. Until the Supreme Court changed the law in its *Agostini* opinion, the State Defendants, like the lower courts, were under a duty to follow prior Supreme Court precedent that was at odds with the result sought by the Plaintiffs in the litigation.

The Court of Appeals for the Eighth Circuit has stated that the purpose underlying the decision of Congress to provide attorneys' fees for prevailing parties in lawsuits brought under Section 1983 was "to encourage attorneys to prosecute constitutional *violations.*" *Curtis v. City of Des Moines,* 995 F.2d 125, 129 (8th Cir.1993) (emphasis supplied), (citing, *Venegas v. Mitchell,* 495 U.S. 82, 86, 110 S.Ct. 1679, 109 L.Ed.2d 74 (1990), and *Hensley v. Eckerhart,* 461 U.S. 424, 429, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). Plaintiffs rely upon this statement of the purpose, but we think they overlook the term "violations," which we have emphasized. The objective of Congress, after all, is not to encourage lawsuits, but rather to encourage public officials to act in accordance with the Constitution, using as an inducement the real threat of litigation, and the possibility of paying attorneys' fees if they *fail* to act in accordance with their duty.

When this action was commenced, the State Defendants were confronted with directly adverse, controlling Supreme Court precedent. Plaintiffs urged them not to follow that precedent, on the ground that the Supreme Court was prepared to repudiate it in the *Agostini* case then pending for decision. All parties were aware, prior to the commencement of the litigation, that the *Agostini* case could lead to a reversal of the *Aguilar* decision. Indeed, that was part of Plaintiffs' legal theory of the case. When the Supreme Court granted certiorari in the *Agostini* case, the parties were also aware that the Supreme Court would be announcing its decision by June, 1997, and that whatever the decision of the Supreme Court, it would likely have a dispositive effect on this Minnesota litigation.

Whatever may be the merit of the view that parallel proceedings in State and Federal Court challenging the same laws are not to be discouraged, we think the question of the timing of the litigation under the circumstances of this case suggests an additional reason to conclude that there are special circumstances here which warrant denial of attorneys' fees. In *Oxford House–A v. City of University City,* 87 F.3d 1022 (8th Cir. 1996) attorneys' fees were denied for reasons which are factually dissimilar, but on the principle that the litigation was premature.

In this unique case, the idea of encouraging litigation is at odds with the goal of encouraging public officials to act in accordance with applicable decisions of the Supreme Court. Congress could not have intended that a public body could be bound by inconsistent duties—on the one hand the duty to comply with the decisions of the Supreme Court until they are changed, and on the other hand to pay attorneys' fees to a party which brings a lawsuit demanding that they do otherwise.

### Reasonableness of the Fee Petition

Defendants urge that attorneys' fees be denied on the ground that Plaintiffs claim for fees is unreasonably high, and that denial of fees is an appropriate response to such a demand. They contend that the total of $272,000 is unreasonably high in itself, and that this is compounded when one considers that the components of that total include a claim of $62,000 solely for legal fees incurred

in seeking legal fees. They also point out that even though the State Defendants basically agreed to a resolution as of the June 23, 1997 *Agostini* decision, almost 40 hours a week of attorneys' fees are claimed by Plaintiffs for the period June 23 to July 31, at a cost in excess of $50,000. Defendants rely on cases such as *Thelen Oil Co. v. Fina Oil & Chemical Co.*, 962 F.2d 821 (8th Cir.1992) and *Brown v. Stackler*, 612 F.2d 1057, 1059 (7th Cir.1980).

Since we conclude that Plaintiffs are not entitled to an award of attorneys' fees on other grounds, it is unnecessary to reach the other arguments of Defendants.

## *ORDER*

Based upon all of the files, records, and proceedings herein,

IT IS HEREBY ORDERED as follows:

1. Plaintiffs' Application for an Award of Attorneys' Fees and Expenses Against the State Defendants [Docket No. 123] is denied; and

2. Pursuant to the provisions of Rule 54(b) of the Federal Rules of Civil Procedure, the Court finds that there is no just reason for delay, and directs that Judgment be entered in accordance with this Order.

LET JUDGMENT BE ENTERED ACCORDINGLY.