# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-3268

_____

| | | |
|---|---|---|
| Joan Peter; Sarah Peter, a minor, by and through her parent and natural guardian Joan Peter; Krista Westendorp; Douglas Westendorp; Aaron Westendorp, a minor, by and through his parents and natural guardians Krista Westendorp and Douglas Westendorp, <br><br> Appellants, <br><br> v. <br><br> Christine Jax, Commissioner of Minnesota Department of Children, Families and Learning; Jesse Ventura, Governor, State of Minnesota; Independent School District, No. 877, Buffalo, Minnesota; Independent School District, No. 273, Edina, Minnesota. <br><br> Appellees. | * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * | Appeal from the United States District Court for the District of Minnesota. |

_____

Submitted: April 22, 1999

Filed: August 13, 1999

_____

Before BOWMAN, Chief Judge, ROSS and MAGILL, Circuit Judges.

_____

ROSS, Circuit Judge.

Disabled students, Sarah Peter and Aaron Westendorp, and their parents (appellants) appeal from an order of the district court[1] denying them attorney's fees under 42 U.S.C. § 1988 against the Governor of Minnesota and the Commissioner of the Department of Children, Families and Learning (the State). Peter v. Wedl, 18 F. Supp.2d 1002 (D. Minn. 1998). We affirm.

**BACKGROUND**

Some of the background of this litigation is set forth in Peter v. Wedl, 155 F.3d 992 (8th Cir. 1998). Relevant to this fee dispute is the following. In July 1996, appellants brought an action under 42 U.S.C. § 1983 against their school districts and the State, alleging that Minn. R. 3525.1150 (the rule) barred provision of on-site paraprofessional services at religious schools in violation of their rights to free speech, free exercise of religion, and equal protection under the First and Fourteenth Amendments, as well as under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400-1491o (1994) and state law. The rule required that school districts provide special education services "at a neutral site," which included nonreligious private schools, but not religious schools. See Minn. Stat. §123.932, subd. 9.

Appellants filed a motion for a preliminary injunction enjoining enforcement of the rule, relying on, among other cases, Zobrest v. Catalina Foothills Sch. Dist., 509 U.S. 1 (1993). In Zobrest, the Supreme Court held that the Establishment Clause did not bar a school district from providing a student with a sign-language interpreter at a religious school. The State opposed the motion and moved to dismiss, relying on, among other cases, Aguilar v. Felton, 473 U.S. 402 (1985), in which the Supreme

---

[1]The Honorable John M. Mason, United States Magistrate Judge for the District of Minnesota, to whom this matter was referred for submission by consent of the parties under 28 U.S.C. § 636(c). Because another matter is pending in the district court, the court entered its order pursuant to Fed. R. Civ. P. 54(b), thus making it appealable.

Court held that the Establishment Clause barred public school teachers from providing remedial education services in a religious school. The school districts also filed various motions.

In March 1997, the district court denied injunctive relief, granted in part and denied in part appellees' motions to dismiss, and granted a motion for summary judgment against appellants on their IDEA claims. Peter v. Johnson, 958 F. Supp. 1383, 1400 (D. Minn. 1997), rev'd in part, Peter v. Wedl, 155 F.3d at 1002.

On June 23, 1997, the Supreme Court decided Agostini v. Felton, 521 U.S. 203 (1997). In Agostini, the Court expressly overruled Aguilar and held that the Establishment Clause did not bar provision of publicly-funded remedial services at religious schools.

On June 24, 1997, the State wrote appellants' counsel, proposing putting the litigation "on hold" until June 27 while it reviewed Agostini. However, on June 26, appellants brought a new motion for preliminary injunction based on Agostini. Later that day, the State faxed a letter to appellants expressing surprise on receiving the motion in light of its June 24 letter. The State also advised appellants that after review of Agostini the Commissioner no longer intended to "enforce Minn. R. 3525.1150 to prevent school districts from providing special education services on-site at sectarian schools." The State indicated it would work with the state board of education to repeal the rule to the extent it was inconsistent with Agostini, but noted that school districts retained the discretion to determine whether to provide special education services at private schools. In letters of July 11 and 22, the State reiterated its position that "because of Agostini, the State will no longer enforce the rule as limited to neutral sites" and that the school districts had the responsibility for provision of special education services. In its July 11 letter, the State also advised appellants that only the state board of education had the authority to change the rule and the Commissioner

could not "dictate the outcome of the rulemaking process," which could take several months.

On July 31, 1997, appellants and the State stipulated to entry of a preliminary injunction. On August 5, the court entered a preliminary injunction enjoining enforcement of the rule "insofar as it prohibits provision of special education services to Plaintiffs Sarah Peter and Aaron Westendorp on the premises of a private religious school." In October 1997, the state school board changed the rule so that it no longer prohibited provision of special education services at religious schools, explaining the change was necessary to comply with Agostini. The district court then dismissed the claims against the State as moot.

In September 1997, the Peters entered into a settlement agreement with their school district in which the district agreed to rescind policies that prohibited provision of paraprofessional services at religious schools and to pay $31,000, which included attorney's fees. However, the Westendorps' school district refused to provide such services, maintaining it did not provide the services at any private school. The Westendorps then moved for a preliminary injunction requiring the school district to provide paraprofessional services at a religious school. The district court thereafter denied injunctive relief and granted summary judgment against the Westendorps' remaining constitutional and state law claims against the district, and they appealed.

While the Westendorps' appeal was pending, appellants filed an application in the district court for attorney's fees against the State under 42 U.S.C. § 1988,[2] seeking $272,494.80 in fees and expenses, including over $62,000 for fee litigation. Appellants contended they were prevailing parties under Farrar v. Hobby, 506 U.S. 103 (1992),

---

[2]A "district court retains jurisdiction over collateral matters, such as attorney's fees . . ., while an appeal is pending." Missouri v. Coeur D'Alene Tribe, 164 F.3d 1102, 1107 n.3 (8th Cir.), cert. denied, 119 S. Ct. 2400 (1999).

because they obtained relief on the merits of their claim against the State.  In the alternative, appellants contended they were prevailing parties because their lawsuit was the catalyst for the change in the State's position.

The district court denied the fee application.  The court held that appellants were not prevailing parties under Farrar because the relief obtained by the consent injunction and stipulation did not materially benefit them, as Farrar required, noting it was the school district's responsibility to provide the requested paraprofessional services.  See Id. at 111.  The court also held that appellants were not prevailing parties under a catalyst theory of recovery, finding that the State changed its position because of Agostini, not because of the lawsuit.  In any event, the court concluded even if appellants were prevailing parties, it would deny attorney's fees because of special circumstances, including that until the Supreme Court's decision in Agostini, the State was obligated to follow Aguilar.

**DISCUSSION**

Under 42 U.S.C § 1988(b), a district "court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs."   We review the denial of fees for an abuse of discretion.  Jenkins v. Missouri, 127 F.3d 709, 713 (8th Cir. 1997) (en banc).  However, "the question of prevailing party status, a statutory term, presents a legal issue for decision, which we review de novo."   Id. at 713-14.

In the district court, the parties disputed whether Farrar or the catalyst theory should apply to determine prevailing party status.  Under Farrar, a plaintiff must obtain "some relief on the merits of his claim . . . against the defendant from whom fees are sought," either through an enforceable judgment or comparable relief.  Farrar, 506 U.S. at 111.  The catalyst theory is an "alternative to the Farrar approach in cases where the defendant voluntarily granted the requested relief, rendering the lawsuit moot[,]" if the lawsuit was the cause of the remedial action and defendant's compliance was not gratuitous.  Tyler v. Corner Constr. Corp., 167 F.3d 1202, 1205 (8th Cir. 1999).  In

Tyler, this court, noting some confusion in our cases, held that courts should apply "the principles outlined in Farrar to determine prevailing-party status in cases that result in settlement." Id. In light of Tyler, the parties concede, and we agree, that the Farrar principles are applicable.

We turn now to those principles. Appellants argue the consent injunction and stipulation automatically make them prevailing parties under Farrar. We disagree. Although under Farrar, a plaintiff must obtain relief on the merits through an enforceable judgment, a consent decree, or a settlement, that is not enough. In addition, the relief must "materially alter[] the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." Farrar, 506 U.S. at 111-12. The Court also emphasized "[w]hatever relief the plaintiff secures must directly benefit him at the time of the judgment or settlement." Id. at 111. The Court explained that it is "[o]nly under these circumstances can civil rights litigation effect 'the material alteration of the legal relationship of the parties' and thereby transform the plaintiff into a prevailing party." Id. (quoting Texas State Teachers Ass'n. v. Garland Indep. Sch. Dist., 489 U.S. 782, 792-93 (1989)). "Otherwise the judgment or settlement cannot be said to 'affec[t] the behavior of the defendant toward the plaintiff.' " Id. (quoting Rhodes v. Stewart, 488 U.S.1, 4 (1988) (per curiam)).

Thus, as we read Farrar, the civil rights litigation, not some other reason, must be the cause for the change in a defendant's behavior. In other words, under Farrar, not only must the plaintiff "have obtained relief through a judgment or settlement[,]" but also the "lawsuit [must] be a catalyst of legal change favorable to the plaintiff." Board of Educ. v. Steven L., 89 F.3d 464, 469 (7th Cir. 1996), cert. denied, 520 U.S. 1198 (1997); see also New Hampshire v. Adams, 159 F.3d 680, 684 (1st Cir. 1998) ("fee-seeker [must] show both materiality and causation as prerequisites to achieving prevailing party status"); Statewide Reapportionment Advisory Comm. v. Beasley, 99 F.3d 134, 137 (4th Cir. 1996) (en banc) ("To be a prevailing party in a legal action, a party must obtain relief in the action on the merits of his claim, and not from some other

process.") (Niemeyer, J., concurring), <u>cert. denied</u>, 520 U.S. 1166 (1997) (internal citation omitted).

In determining whether a party prevails because of a lawsuit or because of some other reason, this court has rejected a "but for" test of causation. <u>Traux v. Bowen</u>, 842 F.2d 995, 997 (8th Cir. 1988) ("although it is true that had [claimant] not filed his lawsuit he would not have obtained relief, we fail to see how this 'but for' argument establishes a causal connection between the litigation and . . . remedial action"); <u>see also</u> <u>Steven L.</u>, 89 F.3d at 469 (to determine prevailing-party status " '[b]ut for' is not an adequate conception of cause"); <u>Brown v. Griggsville Community Unit Sch. Dist. No. 4</u>,12 F.3d 681, 685 (7th Cir. 1993) (plaintiffs were not prevailing parties where school "board changed its mind for reasons unrelated to the legal proceeding (except in the 'but for' sense")). Rather, "a proper concept of causation requires more, requires that the putative cause also have made the consequence more likely to occur." <u>Id.</u> "Whether such a causal link existed is a question of fact[,]" which we review under the clearly erroneous standard. <u>Shipman v. Missouri Dept. of Family Serv.</u>, 877 F.2d 678, 682 (8th Cir. 1989), <u>cert. denied</u>, 493 U.S. 1045 (1990).

We agree with appellants that as a general rule when a party "settles with government authorities following the commencement of a citizen suit, it is permissible to infer that the citizen suit motivated the settlement." <u>Armstrong v. ASARCO, Inc.</u>, 138 F.3d 382, 387 (8th Cir. 1998).[3] However, in this case, because of the intervening and dispositive <u>Agostini</u> decision, we do not believe the general rule is applicable. In this case, the district court's finding that the State changed its position on enforcement of the rule because of <u>Agostini</u>, and not because of appellants' lawsuit, is supported by the record and thus not clearly erroneous. Before the Supreme Court's decision in

_____

[3]"A fee-seeker who aspires to prevailing party status may make the requisite showing of causation by . . . win[ning] the litigation." <u>Adams</u>, 159 F.3d at 684 (internal quotation omitted).

<u>Agostini</u>, the State did not waiver in its position that the case was controlled by <u>Aguilar</u>. On June 24, the day after <u>Agostini</u> was decided, the State asked appellants to put the litigation on hold for three days while it considered the implications of the decision. On June 26, the State wrote appellants that in light of <u>Agostini</u> the commissioner would "no longer enforce Minn. R. 3525.1150 to prevent school districts from providing special education services on-site at sectarian schools and would take action to repeal the rule to the extent it was inconsistent with <u>Agostini.</u>" The State reiterated its position in letters of July 11 and 22. On July 31 appellants and the State stipulated to entry of the injunction enjoining enforcement of the rule to the extent it was inconsistent with <u>Agostini</u>. On August 5, the court enjoined the State from "enforcing Rule 3525.1150 insofar as it prohibits provision of special education services to Plaintiffs Sarah Peter and Aaron Westendorp on the premises of a private religious school."

The chronology amply supports the district court's finding that it was <u>Agostini</u>, not the litigation, that caused the State to change its position on enforcement of the rule. Indeed, this court recognized that the State "abandoned [its Establishment Clause] argument following the Supreme Court's decision in <u>Agostini</u>," and "[f]ollowing this decision," stipulated to entry of an injunction. <u>Peter</u>, 155 F.3d at 995, 997. Put another way, because at the time the stipulation and injunction were entered, the State was no longer enforcing the rule the documents did not "materially alter[] the legal relationship between the parties." <u>Farrar</u>, 506 U.S. at 111. <u>See</u> <u>Martinez v. Wilson</u>, 32 F.3d 1415, 1423 (9th Cir. 1994) (party did not prevail because "the behavior enjoined was not occurring at the time the injunction issued, nor was there any imminent threat of its occurrence"). In addition, the Supreme Court has explained that "[w]here the plaintiff's success on a legal claim can be characterized as purely technical," the plaintiff would not be a prevailing party. <u>Garland</u>, 489 U.S. at 792. After <u>Agostini</u> was decided, it seems to us the entry of the stipulated injunction was at most a technical success, which would not entitle appellants to attorney's fees.

We have considered appellants' argument that Agostini was the state defendants' "ultimate cover to concede a lost cause in a way that both avoided certain judicial defeat . . . and . . . attorney fee liability."[4] Appellants assert that their discovery materials "influenced [the State's] decision to swiftly settle, agree to the injunction, and conclude this litigation as it did." We disagree. Appellants claim their "most important discovery" was the deposition of Penny Kodrich, director of special services for the Westendorps' school district, in which she stated the rule prevented the district from providing special services to Aaron at a religious school -- which is what the rule did. In any event, the deposition was taken on July 17, after the State announced that the rule would no longer be enforced to the extent it was inconsistent with Agostini, and thus could not have influenced the State's decision.

Appellants also claim the May 12, 1997 deposition of Wayne Erickson, the manager of the state department of special education services, was a "turning point." They note that this court quoted Erickson's deposition testimony that it was "the state's policy" to provide special education services in the classroom of a nonreligious private school. Peter, 155 F.3d at 995. However, as the State maintained throughout the litigation, in his testimony Erickson made clear that the "school district makes the

_____

[4]Appellants also argue they are prevailing parties under an "inevitable victory" theory of recovery, asserting even if not for Agostini, they would have won. We have never expressly recognized such a theory and refuse to do so now. "The [Supreme] Court has repeatedly warned against permitting fee disputes to 'spawn a second litigation of significant dimension.'" Guglietti v. Secretary of Health and Human Serv., 900 F.2d 397, 403 (1st Cir. 1990) (quoting Garland, 489 U.S. at 791). Appellants' proposed theory would "require[] nothing less than the hypothetical relitigation of cases which, because of [an intervening event], need not be litigated at all." Id.

In addition, we note that although this court recognized that in light of Zobrest, the State's Establishment Clause defense "was highly questionable," Peter, 155 F.3d at 997, in Agostini, the Supreme Court warned lower courts not to conclude that "more recent cases have, by implication, overruled an earlier precedent." 521 U.S. at 237.

determination as to whether an individual student is entitled to services," and if so, "to determine where those services are provided."  As the district court found, there is nothing in the record to suggest that the State changed its position on enforcement of the rule in response to Erickson's testimony.  To the contrary, the record shows that until the Supreme Court decided Agostini, the State was actively litigating the case. Indeed, in a July 11 letter the State informed appellants because of "the likely resolution of this matter under Agostini, the State Defendants will not be responding to your Motion in Support of a Preliminary Injunction or attending depositions, and we do not expect you to respond to our pending discovery requests."

Also, and importantly, as the district court noted, resolution of whether the rule was defensible under the Establishment Clause was not dependent upon factual issues, as was the equal protection claim against the Westendorps' school district, see Peter, 155 F.3d at 997 (remand for factual determination of basis for denial of special services),[5] but was a legal question.  Indeed, in a July 2 letter appellants wrote the State that as they read Agostini it was "a complete acceptance of our position that Rule 3525.1150 . . . is not justified by the Establishment Clause."  As this court recognized, after Agostini, the rule could no longer "be justified as a narrowly tailored means of avoiding a violation of the Establishment Clause." Peter, 155 F.3d at 997.

Moreover, consideration of the relief-obtained prong of Farrar  shows that any relief obtained was the result of Agostini, not the litigation.  In their June 26 motion for injunctive relief, appellants asked that the court require "defendants to provide special education services to plaintiff Aaron Westendorp" at a religious school.  However, the injunction only enjoined enforcement of the rule "insofar as it prohibits provision of special education services . . . on the premises of a private religious school."  It did not mandate a change in the rule or require provision of the requested paraprofessional

---

[5]On remand the Westendorps abandoned their equal protection claim.  See infra at 17.

services at religious schools. It merely memorialized the Commissioner's previously announced decision that the rule would not be enforced in light of Agostini. Thus, appellants "did not receive any relief which was not mandated by" Agostini. Goehring v. Brophy, 94 F.3d 1294, 1304 (9th Cir. 1996), cert denied, 520 U.S. 1156, overruled on other grounds, City of Boerne v. Flores, 521 U.S. 507 (1997).

In fact, this case is very similar to Goehring. In that case, plaintiffs filed a § 1983 action in federal district court alleging that a state university's policy of using student fees to fund political and religious organizations violated their First Amendment rights. After, in another case, the state supreme court held that the policy was unconstitutional and the United States Supreme Court denied certiorari, the university revised its policy to conform to the state supreme court's decision. Plaintiffs then filed a motion for attorney's fees under § 1988, which the district court denied. The Ninth Circuit upheld the denial, holding that plaintiffs were not prevailing parties because the university revised its policy in response to the denial of certiorari and not the lawsuit.

The State also argues because the injunction did not require a rule change or provision of services, it did not "directly benefit" appellants, as Farrar requires. See Farrar, 506 U.S. at 111 ("Whatever relief the plaintiff secures must directly benefit him at the time of the judgment or settlement."). The State notes only the state school board, a nonparty, could change the rule and only the school districts could provide the requested paraprofessional services. Appellants argue they benefited because the stipulation and injunction caused the State to "immediately ceas[e] the invidious discrimination of the rule." They rely on Jacobson v. City of Coates, 171 F.3d 1162, 1163 (8th Cir. 1999) (per curiam), in which this court held that appellants were prevailing parties because a judicial determination that an ordinance "was unconstitutional changed the legal relationship between appellants and the City." However, this court has also stated that "'a judicial pronouncement that the defendant has violated the Constitution,'" without more, does not make a plaintiff a prevailing party. Pedigo v. P.A.M. Transport, Inc., 98 F.3d 396, 398 (8th Cir. 1996) (quoting

Farrar, 506 U.S. at 112). See also Cady v. City of Chicago, 43 F.3d 326, 330 (7th Cir. 1994) ("unless [plaintiff] can point to a direct benefit . . . other than the 'psychic satisfaction' of ending 'invidious discrimination,' he does not emerge as a prevailing party"). But see Dambrot v. Central Michigan Univ., 55 F.3d 1177, 1192 (6th Cir. 1995) ("vindication of [constitutional rights] . . . constitutes relief such that Plaintiffs should be deemed prevailing parties"). Because we hold that the lawsuit did not cause the State to change its position on enforcement of the rule, we do not decide whether nonenforcement of the rule is a "direct benefit" under Farrar.

In any event, even if appellants were prevailing parties, we agree with the district court that they would not be entitled to fees because of special circumstances. Although prevailing parties "'should ordinarily recover an attorney's fee,'" a district court has discretion to deny an award where "'special circumstances would render such an award unjust.'" Hatfield v. Hayes, 877 F.2d 717, 719 (8th Cir. 1989) (quoting Newman v. Piggie Park Enter., Inc. 390 U.S. 400, 402 (1968)). "Because the language of § 1988 does not include the 'special circumstances' exception, this judicially created exception should be narrowly construed." Id. at 720. In addition, as the district court noted, a defendant's good faith alone is not a special circumstance sufficient to justify a denial of fees. See Yankton Sch. Dist. v. Schramm, 93 F.3d 1369, 1377 (8th Cir. 1996).

However, in this case, we believe "the following reasons, all of which, taken together, amount to special circumstances that would make [a fee] award unjust." Little Rock Sch. Dist. v. Arkansas State Bd. Of Educ., 928 F.2d 248, 249 (8th Cir. 1991) (order); see also Thorsted v. Munro, 75 F.3d 454, 456 (9th Cir. 1996) (order) (although "several of the circumstances identified by the district court [including defendant's good faith] would be insufficient, standing alone, to warrant a denial of fees . . . court did not abuse its discretion by denying fees based on the totality of the circumstances"). First, as the district court noted, until the Supreme Court's decision in Agostini, the State had no choice but to follow Aguilar, even though it might have been undermined by

Zobrest. See Agostini, 521 U.S. at 237  (lower courts should not "conclude [Supreme Court's] more recent cases have, by implication, overruled an earlier precedent"). Within two days of the Agostini ruling, the Commissioner concluded the rule would no longer be enforced to the extent it conflicted with Agostini.  See Chastang v. Flynn & Emrich Co., 541 F.2d 1040, 1045 (4th Cir. 1976) (special circumstances justified denial of fees because company acted "with reasonable dispatch" to bring retirement plan  in compliance with law  "as soon as a murky area of the law was clarified . . . and from the chronology of events we cannot infer that plaintiffs' law suits were a contributing factor").

Moreover, as the district court noted, appellants' counsel was aware that the Supreme Court would likely decide Agostini by June 1997 and believed it would be dispositive, but continued to litigate the matter and incur fees.  In fact, one of appellants' counsel, who seeks reimbursement for over 773 hours at $300 an hour, filed an amicus brief in Agostini and was "confident" the outcome would support his position.  As the First Circuit has stated, "[t]he prevailing party requirement is an incentive mechanism designed to encourage prompt resolution of meritorious claims and to discourage unnecessary litigation."  Adams, 159 F.3d at 687.  "This policy rationale . . . is served by declining to award fees when litigation yields only relief that in all probability was attainable without the time and expense of adversarial proceedings."  Id.  Cf. Oxford House-A v. City of University City, 87 F.3d 1022, 1024 (8th Cir. 1996) (plaintiff was not prevailing party where timing of lawsuit was "unreasonable" because plaintiff obtained same relief in administrative proceedings).

In similar circumstances, the Seventh Circuit has held that the district court did not abuse its discretion in denying a fee request.  In Brown v. Stackler, 612 F.2d 1057, 1058 (7th Cir. 1980), the "complaint raised an issue which everyone knew would be controlled" by a pending Supreme Court case.  After the Supreme Court's ruling, which was favorable for plaintiffs, the district court entered judgment for plaintiffs, who then submitted a fee request claiming 800 hours.  The Seventh Circuit found no abuse of

discretion in the denial of fees, noting "it was utterly unreasonable to expend that amount of time on a . . . case, which would almost automatically be disposed of by the decision [of the Supreme Court] whose determination was being awaited." Id. at 1059.

Indeed, this court has stated that a party in a civil rights action "is not entitled needlessly to accumulate exorbitant legal fees with the expectation that the losing party will be called upon to pick up the entire tab." Planned Parenthood of Minnesota v. Citizens For Community Action, 558 F.2d 861, 871 (8th Cir. 1977). We note that after Agostini, appellants had offered to "stop the meter" on fees if the State agreed to their demands. We remind appellants that "[a]n award of attorney's fees is compensatory, not punitive, and we will not allow a threat of paying the opposing party's unreasonable legal fees to chill" the assertion of a defense of a claim. Id. See also Jaquette v. Black Hawk County, 710 F.2d 455, 463 (8th Cir. 1983) (fee awards "should not serve as a vehicle to charge exorbitant fees and such excessive fees should not act to chill good faith defenses to claims brought under the Civil Rights Act").

We also note that appellants, who have hired a so-called "fee-litigation specialist," in their application claimed over $62,000 for district court fee litigation, but now inform this court that the amount has grown to $75,000, and if successful in this court would, of course, seek fees for the appeal. Although appellants claim that $75,000 for fee litigation against the State in the district court is reasonable, we believe the amount is excessive. We remind appellants of the Supreme Court's admonition that "[a] request for attorney's fees should not result in a second major litigation." Hensley v. Eckerhart, 461 U.S. 424, 437 (1983).

In addition, appellants are "'[a]pparently unmindful of the Supreme Court's admonition that fee awards are not intended to 'produce windfalls to attorneys.'" St. Louis Firefighters Ass'n. v. City of St. Louis, 96 F.3d 323, 332 n.9 (8th Cir. 1996) (quoting Riverside v. Rivera, 477 U.S. 561, 580 (1986)). This court has held that "special circumstances ma[d]e a fee award unjust" against a defendant who "did only

-14-

what it reasonably believed was compelled by state law," because awards against other defendants, who had a "much more direct connection" to constitutional violations, "fully compensate[d] the plaintiff to the extent required by law." Rose v. State of Nebraska, 748 F.2d 1258, 1264 (8th Cir. 1984), cert. denied, 474 U.S. 817 (1985); see also Little Rock Sch. Dist., 928 F.2d at 249 (court denied fees because plaintiffs had been "well compensated" by fee awards against other parties). In this case, the State points out the Peters have received $31,000 from their school district, which includes attorney's fees, and the Westendorps' fee petition requesting apparently over $60,000 against their school district is pending in the district court.[6] Relying on Rose, the State argues an award of fees against it would be unjust because it was the responsibility of the school districts to provide the requested paraprofessional services and that provision of such services was the actual relief appellants sought and was independent of the State's position on enforcement of the rule.

We agree and believe the Westendorps' litigation proves the point. After the State decided not to enforce the rule, their school district still refused to provide paraprofessional services in a religious school, maintaining it did not provide such services in any private school. In our previous appeal, we reversed the district court's grant of summary judgment on the Westendorps' equal protection claim and remanded "for a factual determination of whether [the school district] based its denial of services . . . on its purported religion-neutral policy, or if its denial was based on the religious animus contained in Minnesota Rule 3525.1150." Peter, 155 F.3d at 998. In addition, we reversed the district court's grant of summary judgment on their IDEA claim, but only as to violations before the 1997 Amendments to the IDEA, which made clear a school district was not required to provide special education services in a private school

---

[6]The district court stayed ruling on attorney's fee issues pending the decision in this appeal. We note we had remanded for the district court's consideration the Westendorps' request for over $67,000 in fees in connection with their previous appeal.

if a student received the services in a public school. <u>Id.</u> We left the proper relief for the past violations to the discretion of the district court. <u>Id.</u> at 1001.

On remand, the district court, as equitable relief for the past IDEA violations, ordered the school district "to provide a classroom paraprofessional aide to Aaron Westendorp at the school chosen by his parents, whether public or private (including religious), for the equivalent of six academic years" and also ordered the school district to pay $1 in stipulated damages. <u>Westendorp v. Indep. Sch. Dist. No 273</u>, 35 F. Supp.2d 1134, 1138 (D. Minn. 1998). The Westendorps then requested that the district court enter final judgment, representing that the relief obtained on their IDEA claim provided "all the relief they have sought in this case" and it was thus unnecessary for the court to address their constitutional claim, which implicated the State's enforcement of the rule. The State did not object, and the court entered final judgment on the IDEA claim without resolving the constitutional claim. Because resolution of a constitutional claim involving the State's enforcement of the rule was unnecessary to Aaron's obtaining the requested paraprofessional services in a religious school, an award against the State is "unnecessary to vindicate [appellants'] federal rights." <u>Rose</u>, 748 F.2d at 1264.[7]

**CONCLUSION**

In sum, we hold that appellants are not prevailing parties and thus the district court did not abuse its discretion in denying an award of attorney's fees. In the alternative, even if appellants were prevailing parties, we would hold that special circumstances justified a denial of fees.

---

[7]Although we did not decide whether nonenforcement of the rule was the kind of "direct relief" <u>Farrar</u> requires, <u>see</u> supra at 12, we believe the resolution of the Westendorps' claims supports the State's arguments that it was not.

Accordingly, we affirm the district court's order denying attorney's fees.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT